**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, YOUNGSTOWN**

| | |
|---|---|
| **AYSIA CANTERBURY & LISA SODERGEN, individually, and on behalf of all others similarly situated,** | **Case No.:** |
| *Plaintiffs*, | |
| v. | |
| **NORFOLK SOUTHERN CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY** | **JURY TRIAL DEMANDED** |
| *Defendants*. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Aysia Canterbury and Lisa Sodergen, individually and on behalf of the putative class of all similarly situated persons, sue Defendants Norfolk Southern Corporation and Norfolk Southern Railway Company (together "Norfolk Southern") and, based upon personal knowledge and on investigation of counsel and review of public documents and information, allege as follows:

## INTRODUCTION

1.     On February 3, 2023, at approximately 8:54 p.m., a mechanical defect alarm sounded on eastbound Norfolk Southern Railway Freight Train 32N. An overheated wheel bearing was failing, and about to lead to catastrophe.

2.     Moments later, Train 32N derailed in East Palestine, Ohio. Fifty rail cars were derailed or damaged. Several cars containing flammable and combustible materials breached, spilling approximately 688,000 pounds of polyvinyl, 273,394 pounds of Ethylhexyl Acrylate, 273,394 pounds of Ethylene Glycol Monobutyl Ether, 206,000 pounds of Butyl Acrylates, and igniting an inferno that would burn for days.

3.      Train 32N was also carrying five railcars full of Vinyl Chloride. Vinyl Chloride is a powerful cancer causing gas. Public health bodies such as IARC, EPA and NTP unanimously characterize vinyl chloride as a known human carcinogen. Vinyl chloride causes numerous forms of cancer, including rare forms of liver cancer.

4.      Vinyl Chloride is a DNA mutating chemical, and therefore there is no safe level of exposure. Residents exposed to Vinyl Chloride may already be undergoing DNA mutations that may not manifest as a clinical cancer diagnosis for years or decades.

5.      Vinyl chloride is highly combustible, and as Norfolk Southern's pile of wreckage continued to blaze for several days, and Norfolk Southern failed to extinguish the fires, concern began to mount about the integrity of the vinyl chloride railcars.



6.      The heat from the blaze increased pressure in the Vinyl Chloride cars, leading to an activation of emergency relief valves design to vent vinyl chloride to the atmosphere to relieve pressure under emergency conditions.

7.      But at least one of the emergency relief valves failed, spiking pressure and temperatures in the vinyl chloride cars, and risking further catastrophe. Residents were immediately evacuated from their homes due to the imminent potential for deadly explosions.



**Governor Mike DeWine** ✔
@GovMikeDeWine

East Palestine: Residents living within a mile of the train derailment site who have not yet left their homes are asked to immediately evacuate due to the potential of a major explosion.

### EAST PALESTINE URGENT EVACUATION NOTICE

(COLUMBUS, Ohio)—Following an evening briefing regarding the train derailment in East Palestine, Governor DeWine and Columbiana County officials are issuing an urgent warning to those living within a mile of the derailment. Within the last two hours, a drastic temperature change has taken place in a rail car, and there is now the potential of a catastrophic tanker failure which could cause an explosion with the potential of deadly shrapnel traveling up to a mile.

Although teams are working to prevent an explosion from happening, residents living within a mile of the site are advised to immediately leave the area. While most individuals in the one-mile radius have already evacuated, local officials say that more than 500 people have declined to leave their homes.

Those who have the means to leave are advised to immediately evacuate. Those who need help evacuating the area should call 330-426-4341. According to the Columbiana County Sheriff, those with children in their homes who decline to evacuate may be subject to arrest.

At approximately 8 p.m., Governor DeWine activated the Ohio National Guard to deploy to the scene to assist local authorities. The Ohio State Highway Patrol, Ohio Emergency Management Agency, and Ohio EPA are also assisting.

7:40 PM · Feb 5, 2023 · **661.4K** Views

8.      This situation  would never have occurred if not for failure on top of failure by Norfolk Southern. Train 32N should never have been operated in such a reckless manner that its wheel bearings would fail and cause derailment of a train carrying highly toxic and combustible substances. Even after derailment, the integrity of cars containing highly toxic and combustible substances should not have breached, and emergency pressure relief valves should have functioned as designed.

9.      Nevertheless, Norfolk Southern layered on yet more failures once it found its derailed train at imminent risk of catastrophic detonation.

10.     Norfolk Southern blew holes in its vinyl chloride cars, and dumped 1,109,400 pounds of cancer causing Vinyl Chloride directly into the environment.



11.     For context, the highest emitter of vinyl chloride in the United States discharged 68,346 pounds of vinyl chloride in 2021. The total for all emissions of vinyl chloride in that year was 428,522 pounds.

12.     In other words, Norfolk Southern discharged more cancer causing Vinyl Chloride into the environment in the course of a week than all industrial emitters combined did in the course of a year.

TRI On-site and Off-site Reported Disposed of or Otherwise Released (in pounds), for all 38 facilities, for facilities in All Industries, for Vinyl chloride chemical, U.S., 2021

| Row # | Facility | Total On-site Disposal or Other Releases | Total Off-site Disposal or Other Releases | Total On- and Off-site Disposal or Other Releases |
|---|---|---|---|---|
| 1 | FORMOSA PLASTICS CORP TEXAS 201 FORMOSA DR, POINT COMFORT TEXAS 77978 (CALHOUN) | 68,346 | 0 | 68,346 |
| 2 | WESTLAKE VINYLS INC 2468 IND US TRIAL PKWY, CALVERT CITY KENTUCKY 42029 (MARSHALL) | 59,329 | 7 | 59,336 |
| 3 | WESTLAKE PVC CORP 230 JOHNSON RILEY RD, CALVERT CITY KENTUCKY 42029 (MARSHALL) | 57,053 | | 57,053 |
| 4 | WESTLAKE LAKE CHARLES NORTH 1600 VCM PLANT RD, WESTLAKE LOUISIANA 70669 (CALCASIEU PARISH) | 21,137 | | 21,137 |
| 5 | MEXICHEM SPECIALTY RESINS INC 76 PORCUPINE RD - PO BOX 420, PEDRICKTOWN NEW JERSEY 08067 (SALEM) | 20,488 | 10 | 20,498 |
| 6 | WESTLAKE VINYLS CO 36045 HWY 30, GEISMAR LOUISIANA 70734 (ASCENSION PARISH) | 19,300 | | 19,300 |
| 7 | MEXICHEM SPECIALTY RESINS INC 1546 COUNTY RD 1450N, HENRY ILLINOIS 61537 (MARSHALL) | 19,115 | 21 | 19,135 |
| 8 | AXIALL LLC 26100 HWY 405 S, PLAQUEMINE LOUISIANA 70764 (IBERVILLE PARISH) | 18,922 | | 18,922 |
| 9 | FORMOSA PLASTICS CORP LOUISIANA GULF STATES RD, BATON ROUGE LOUISIANA 70805 (EAST BATON ROUGE PARISH) | 18,249 | | 18,249 |
| 10 | SHINTECH INC 5618 HWY 332 E, FREEPORT TEXAS 77541 (BRAZORIA) | 17,721 | | 17,721 |
| 11 | SHINTECH PLAQUEMINE PLANT 26270 HWY 405, PLAQUEMINE LOUISIANA 70764 (IBERVILLE PARISH) | 16,265 | | 16,265 |
| 12 | OXY VINYLS LP PASADENA PVC PLANT 4403 PASADENA FWY, PASADENA TEXAS 77503 (HARRIS) | 15,599 | | 15,599 |
| 13 | SHINTECH LOUISIANA LLC - ADDIS PLANT A 9750 LOUISIANA HWY 1 S, ADDIS LOUISIANA 70710 (WEST BATON ROUGE PARISH) | 15,192 | | 15,192 |
| 14 | OCCIDENTAL CHEMICAL CORP 4133 HWY 361, GREGORY TEXAS 78359 (SAN PATRICIO) | 15,008 | | 15,008 |
| 15 | OXY VINYLS LP DEER PARK CAUSTIC 1000 TIDAL RD, DEER PARK TEXAS 77536 (HARRIS) | 10,583 | | 10,583 |
| 16 | OXY VINYLS LP LA PORTE VCM PLANT 2400 MILLER CUTOFF RD, LA PORTE TEXAS 77571 (HARRIS) | 7,350 | 88 | 7,438 |
| 17 | EAGLE US 2 LLC 1300 PPG DR, WESTLAKE LOUISIANA 70669 (CALCASIEU PARISH) | 5,287 | 1 | 5,288 |
| 18 | AXIALL LLC-ABERDEEN 715 HWY 25 S, ABERDEEN MISSISSIPPI 39730 (MONROE) | 4,779 | | 4,779 |
| 19 | OXY VINYLS LP DEER PARK-VCM PLANT 5900 HWY 225 GATE 8A, DEER PARK TEXAS 77536 (HARRIS) | 3,977 | | 3,977 |
| 20 | OXY VINYLS LP RT 130 & PORCUPINE RD, PEDRICKTOWN NEW JERSEY 08067 (SALEM) | 3,929 | | 3,929 |
| 21 | OCCIDENTAL CHEMICAL HOLDING CORP - GEISMAR PLANT 8318 ASHLAND RD, GEISMAR LOUISIANA 70734 (ASCENSION PARISH) | 3,232 | 51 | 3,283 |
| 22 | FREEPORT OLIN BC 2301 N BRAZOSPORT BLVD, FREEPORT TEXAS 77541 (BRAZORIA) | 2,418 | | 2,418 |
| | Total | 428,233 | 289 | 428,522 |
| | Total disposal or other releases omitting double counted amounts | | | 428,522 |

13.  Vinyl Chloride is persistent in the environment, and when dumped directly onto soil can leach into groundwater.

14.  Instead of properly containing and cleaning up its mess, and being responsible for a costly cleanup effort, Norfolk Southern had a different idea: "Set it on Fire".

15.  Norfolk Southern ignited a 1 million pound plus chemical burn pit that burned for days and covered Plaintiffs and Class Members in a large plume of thick black smoke. A mushroom cloud resulted from the blaze, dispersing toxic chemicals for miles and across State lines into Pennsylvania.

16.     There is a major problem with setting Vinyl Chloride on fire—it creates Phosgene Gas. Phosgene Gas is a chemical warfare agent banned under the Geneva Convention and was responsible for the deaths of about 85,000 people in World War I.

17.     As a result of Norfolk Southern's decision to ignite a million pound chemical burn pit, and subject surrounding communities to chemical warfare agents instead of cleaning up its mess, Plaintiffs and Class Members have been exposed to toxic and noxious chemicals.

18.     Plaintiffs and others in the community have suffered significant and sustained irritation to their throats, eyes, lungs, mouths and lips, and had their properties invaded by dangerous plumes of chemical smoke.

19.     Plaintiffs and Class Members have also been exposed as a result of Norfolk Southern's decision to run Train 32N until it broke, instead of taking reasonable steps to ensure safe operations.

20.     Plaintiff brings this class action seeking relief from Norfolk Southern's reckless and willfully indifferent conduct.

## **PARTIES**

21.     Plaintiff Aysia Canterbury is a citizen of Ohio and lives in Columbiana County. As a result of Defendants' reckless conduct, Plaintiff has been exposed to high levels of toxic chemicals.

22.     Plaintiff Lisa Sodergen is a citizen of Pennsylvania and lives in Lawrence County. As a result of Defendants' reckless conduct, Plaintiff has been exposed to high levels of toxic chemicals.

23.     Defendant Norfolk Southern Corporation ("NSC") is a corporation duly organized and existing under and by virtue of the laws of the Commonwealth of Virginia with its principal place of business located at 1200 Peachtree Street, NE, Atlanta, Georgia 30308.

24.     Defendant Norfolk Southern Railway Company ("NSRC") is a wholly owned subsidiary of NSC. NSRC is a Class I railroad corporation duly organized and existing under and by virtue of the laws of the Commonwealth of Virginia with its principal place of business located at 1200 Peachtree Street, NE, Atlanta, Georgia 30308.

25.     Upon information and belief, NSRC has consistently held itself out as conducting business affairs as a conduit for NSC in connection with the ownership and operation of the their railway enterprise. Additionally, NSC and NSRC constituted a joint venture in connection with their railway enterprise insasmuch as they agreed to undertake ownership and operation of the enterprise jointly for the purpose of sharing associated profits and losses, and in connection therewith, each contributed their respective skills, property or resources in exercising control or a right of control over the facilities.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are more than 100 Class Members, and Plaintiff and many Class Members and Defendants are citizens of different states.

27.     This Court has jurisdiction over each Defendant because they each operated their railway enterprise in this District. Through their regular business operations in this District, Defendants intentionally and regularly availed themselves of the markets and jurisdiction in this District, conferring this Court with personal jurisdiction over each Defendant.

28.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, and

Defendants' railway operations in this District caused harm to Plaintiff and Class Members in this District.

## STATEMENT OF FACTS

29.     Norfolk Southern operates approximately 19,300 route miles (in 22 States and the District of Columbia) with 2,402 route miles (12%) in the Commonwealth of Pennsylvania alone, and serves every major container port in the eastern United States.

30.     According to the Federal Railroad Administration ("FRA"), NSRC had the most derailments of all railroad companies in Ohio from 2019 through 2022, with 67 accidents total.

31.     According to the FRA, NRSC also had the most derailments of all railroad companies in Pennsylvania, with 74 total derailments from 2019 to 2022. Norfolk Southern's derailments accounted for 89.2% of all derailments in this period.

32.     Norfolk Southern's pattern of conduct in Pennsylvania and Ohio is indicative of a "run it until it breaks" philosophy that puts profits above the health and safety of individuals.

33.     This corporate philosophy led to catastrophe in February 2023.

34.     On Friday February 3, 2023, Norfolk Southern Freight Train 32N was travelling from Madison County, Illinois to Conway, Pennsylvania.

35.     At approximately 8:54 p.m., a mechanical defect alarm sounded on eastbound Norfolk Southern Railway Freight Train 32N. Around the same time, an overheated wheel bearing was in failure. The 141 car train carrying hazardous and combustible materials derailed.

36.     At least 12 cars containing dangerous chemicals breached, spilling 688,000 pounds of polyvinyl, 273,394 pounds of Ethylhexyl Acrylate, 273,394 pounds of Ethylene Glycol Monobutyl Ether, 206,000 pounds of Butyl Acrylates, among other substances, into the environment.

37.     These and other spilled chemicals ignited, causing a conflagration that could not be extinguished for days.

38.     Included in the wreckage of Train 32N were five cars collectively carrying 1,109,400 pounds of cancer causing Vinyl Chloride. Emergency relief valves on these cars failed. By February 5, the failure of these valves led to temperature and pressure buildups in the Vinyl Chloride tanks and an imminent potential for catastrophic explosion.

39.     Vinyl Chloride is an artificial volatile organic compound that does not occur in nature. It is colorless and odorless unless present in extremely high and dangerous concentrations. Above 3,000,000 ppb, Vinyl Chloride has a mild, sweet odor.  Because it is volatile, it readily converts to a gas and travels through air with wind. It also moves through soil and groundwater. Vinyl Chloride can cause extremely harmful effects whether exposure occurs through inhalation, ingestion, or dermal contact. These harmful effects include, but are not limited to, damage and toxicity to the nervous system, cardiovascular system, lungs, liver, kidneys, reproductive system, unborn children, nerve damage, and the injuries suffered by Plaintiffs herein.  Vinyl Chloride is also a potent human carcinogen. It is classified by the IARC as "carcinogenic to humans", and EPA has characterized PCE as "a human carcinogen".  Vinyl Chloride can cause numerous types of cancer, including but not limited to, liver cancer, brain cancer, breast cancer and hematopoietic cancers (i.e. lymphoma and leukemia).

40.     Residents were cleared from their homes and places of business, and moved beyond the potential blast zone.

41.     In order to relieve the intense pressures in its failed Vinyl Chloride railcars, Norfolk Southern blew holes into the cars and drained the contents into a crude ditch.

42.     Discharging over one million pounds of Vinyl Chloride directly to the environment is incredibly reckless. Norfolk Southern likely understood that properly containing and removing this volume Vinyl Chloride from the environment would be incredibly expensive and time consuming.

43.     Vinyl Chloride is incredibly toxic, and used in a discrete number of specialty industrial applications. Emissions of Vinyl Chloride are subject to significant regulatory requirements, as is cleanup of Vinyl Chloride contamination.

44.     Over the course of 2021, the most recent year of reporting available, combined industrial emissions of Vinyl Chloride in the entire United States were 428,522 pounds. Norfolk Southern discharged more than *two and half times* this, in a discrete area, over the course of just a few days.

45.     Similarly, Norfolk Southern's Vinyl Chloride discharge was more than *sixteen times* higher than the annual discharge for the largest Vinyl Chloride emitter in the United States.

46.     Just one pound of vinyl chloride released into the atmosphere can contaminate five acres to a level of 2 ppm. Norfolk Southern released over 1.1 million pounds of Vinyl Chloride.

47.     Instead of committing to be a responsible steward, and accounting for the failures on top of failures that led Norfolk Southern to such an enormous discharge of DNA mutating chemicals, Norfolk Southern decided that it would continue its reckless and willful disregard for human life, and instead turn the Vinyl Chloride lagoon it created into a *million pound chemical burn pit.*

48.     Igniting Vinyl Chloride leads to the creation of Phosgene Gas, a chemical warfare agent, as well as numerous other toxic chemicals.

49.     Phosgene Gas is colorless, smells like moldy hay, and is six times deadlier than chlorine gas. It is the most dangerous of the choking agents banned by the Geneva Convention. In low concentrations, is severely irritates the eyes and respiratory organs. In higher concentrations, it also attacks the skin. During and immediately after exposure, there is likely to be coughing, choking, a feeling of tightness in the chest, nausea, and occasionally vomiting, headache and lachrymation. Fatal pulmonary edema may occur.[1] Acute inhalation exposure causes severe respiratory effects, including pulmonary edema, pulmonary emphysema, and can lead to death.[2] Symptoms of acute exposure include choking, chest constriction, coughing, painful breathing and bloody sputum.[3] Acute exposure may also affect the brain, heart, and blood in humans.[4] California EPA has determined that individuals should not be exposed to more than 0.000074 ppm of Phosgene.

50.     Norfolk Southern knew or should have known that Phosgene and other chemicals that would be emitted by setting fire to over 1 million pounds of Vinyl Chloride were extremely toxic.

51.     Norfolk Southern knew or should have known that setting fire to a 1.1 million pound chemical burn pit would cause individuals in nearby communities to be exposed to, and injured by, extremely toxic chemicals.

52.     Nevertheless, despite the extreme toxicity of Vinyl Chloride, Phosgene, and other chemicals resulting from Norfolk Southern's conduct, and the near certainty that innocent

---

[1] https://fas.org/issues/biological-chemical-and-other-non-nuclear-threats/chemical-weapons-syria/types-chemical-weapons/
[2] https://www.epa.gov/sites/default/files/2016-09/documents/phosgene.pdf
[3] https://www.epa.gov/sites/default/files/2016-09/documents/phosgene.pdf
[4] https://www.epa.gov/sites/default/files/2016-09/documents/phosgene.pdf

individuals would be exposed and injured, Norfolk Southern set fire to a 1.1 million pound chemical burn pit anyway.

53. An explosive and fiery plume of thick black smoke formed a mushroom cloud and dispersed toxic chemicals for miles and across State lines. Plaintiffs and Class Members were exposed and injured.

54. Plaintiff Lisa Sodergen lives approximately 5 miles from the site of Norfolk Southern's million pound chemical burn pit and Train 32N's derailment. As a result of Norfolk Southern's recklessness, her house and pasture was surrounded by toxic black smoke. She has suffered from pulmonary, ocular and dermal distress since her exposure to Norfolk Southern's million pound chemical burn pit. She lives with ongoing pulmonary irritation and fear for the long-term consequences to her health and water supply.

55. Plaintiff Aysia Canterbury lives approximately 3.8 miles from the site of Norfolk Southern's million pound chemical burn pit and Train 32N's derailment. As a result of Norfolk Southern's recklessness, her house was surrounded by toxic black smoke. She was forced to evacuate from her home for several days. Norfolk Southern's noxious fumes have left a lingering chemical odor on her property. She and her family have suffered from nasal, pulmonary, and gastrointestinal distress since their exposure to Norfolk Southern's million pound chemical burn pit. She lives with ongoing nasal and pulmonary irritation and fear for the long-term consequences to her health and water supply.

## CLASS ALLEGATIONS

56. Plaintiffs seek relief on behalf of himself and as representative of all others who are similarly situated. Pursuant to Fed. R. Civ. P. Rule 23(a), (b)(2), (b)(3) and (c)(4), Plaintiff seeks certification of a class defined as follows:

**All natural persons who resided, owned property, or worked within a 30 mile radius of 1020 East Taggart Street, East Palestine, Ohio 44413 as of February 3, 2023 ("the Class Zone")**



*Fig. 1: The Class Zone is represented by a radius of 30 miles emanating from the derailment, fire and explosion site.*

57.     Excluded from the Class are Defendants and any of their affiliates, parents or subsidiaries; all employees of Defendants; all persons who have been diagnosed with cancer; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned, their immediate families, and court staff.

58.     Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or subclassing after having had an opportunity to conduct discovery.

59.     The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

60.     **Numerosity. Fed. R. Civ. P. 23(a)(1).**  Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical.  While the exact number of Class Members is unknown to Plaintiff at this time, the proposed Class includes thousands of residents who were unlawfully exposed to or inconvenienced by Norfolk Southern's million pound chemical burn pit. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

61.     **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).**  Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

  a.      Whether Defendants' operated their railroad enterprise negligently, recklessly, intentionally or otherwise tortiously;

  b.      Whether Defendants owed a duty of care to Plaintiff and the Class;

  c.      Whether the duty of care owed to the Class included the duty to protect Plaintiff and the Class against unreasonable harm through exposures to unsafe and unnecessarily high levels of toxic chemicals;

  d.      Whether Defendants breached their duty to warn Plaintiff and the Class of and protect Plaintiff and the Class from the health risks and consequences of exposure to chemicals originating from their million pound chemical burn pit;

  e.      Whether medical monitoring and early detection will provide benefits to members of the Class; and

14

f.      Whether Plaintiff and the Class are entitled to relief and the nature of that relief.

62.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Consistent with Rule 23(a)(3), Plaintiff's claims are typical of those of the putative Class Members. Plaintiffs reside or work in the vicinity of the derailment and million pound chemical burn pit, and bring claims based upon the same legal theories as those of the other Class Members.

63.    Plaintiffs and the other Class Members sustained damages as a direct and proximate result of the same wrongful acts or omissions in which Defendants engaged.

64.    Plaintiffs' damages and injuries are akin to those of Class Members, and Plaintiffs seek relief consistent with the relief of Class Members.

65.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendants to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's Counsel are competent and experienced in litigating class actions, including environmental litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of Class Members.

66.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiff and the Class, while important to them, are relatively small compared to the burden and expense required to individually litigate their claims against

Defendants. Thus, individual litigation to redress Defendants' wrongful conduct would be impracticable. Individual litigation by each Class member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

67.     **Injunctive and Declaratory Relief.** Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

68.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

69.     Finally, all members of the proposed Class are readily ascertainable as they are all current or former residents of defined tracts. Class Members can be identified, and their contact information ascertained for the purpose of providing notice to the Class.

## COUNT I—MEDICAL MONITORING

70.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 69 as if fully set forth here.

71.     Plaintiffs and Class Members have been significantly exposed to dangerous toxins far higher than normal background levels. Defendants' million pound chemical burn pit emitted

16

numerous dangerous toxins that have been proven to cause several different types of cancer in humans.

72.     Plaintiff and Class Members were significantly exposed to dangerous toxins due to Defendants' tortious actions, including Defendants' negligent, ultrahazardous, and willful and wanton conduct,  as further described above and below.

73.     As a proximate result of their exposure to dangerous toxins, Plaintiff and Class Members have acquired a significantly increased risk of contracting serious disease and cancer. This increased risk makes periodic diagnostic medical examinations reasonably necessary.

74.     Monitoring procedures exist that makes early detection of these diseases and cancers possible and beneficial. These monitoring procedures are different than that normally recommended in the absence of toxic exposures and are reasonably necessary due to Plaintiffs' and Class Members' exposures to Defendants' million pound chemical burn pit.

75.     As a result, Plaintiff and the Class should be awarded the quantifiable costs of such a monitoring regime.

### *Defendants' Negligence*

76.     Each Defendant owed Plaintiff and Class Members a duty to operate their railway enterprise in a manner which would not cause Plaintiff and Class Members injury or harm.

77.     Defendants each negligently breached their duty of care by causing Train 32N to derail, by releasing and allowing the release of Vinyl Chloride from Train 32N, and by igniting over 1.1 million pounds of Vinyl Chloride in a chemical burn pit.

78.     Defendants each owed Plaintiff and Class Members a duty of reasonable care and preventing unreasonable harm commensurate with the risk of operating a railroad.

79.     Because of the likelihood of contamination of neighboring areas and exposure to their occupants, Defendants each had a duty to investigate the extent to which Vinyl Chloride

released from Train 32N was likely contaminating the air at levels to materially increase nearby residents' (including Plaintiff' and the Class') likelihood and risks of developing cancer and other diseases.

80.     Defendants each negligently breached their duty of reasonable care and preventing unreasonable harm by, among other things:

      a.  Emitting dangerous volumes of Vinyl Chloride, Phosgene Gas, and other harmful chemicals into the environment;

      b.  Failing to employ safe methods to adequately control their railway enterprises and ensure derailments did not occur;

      c.  Failing to ensure the adequacy and operation of emergency pressure relief devices under emergency conditions;

      d.  Failing to ensure equipment such as wheel bearing and axels were in good working condition;

      e.  Failing to utilize corporate policies and procedures that would prevent derailments from occurring;

      f.  Failing to route railcars carrying hazardous materials in such a way as to avoid populated areas;

      g.  Failing to have or implement a responsible emergency response plans that would minimize and contain the release of toxic chemicals into the environment;

81.     As a direct and proximate result of Defendants' negligence, Plaintiff and Class Members inhaled dangerous levels of toxic chemicals, acquired increased risks of developing cancer and other dangerous diseases, and a resulting present need for medical monitoring.

82.     Defendants, through their knowledge of each other's operations relating to Train 32N, and their financial and other interests and incentives in each other's operations of Train 32N, consciously and deliberately pursued a common plan and design to engage in negligent and tortious conduct and are therefore jointly liable to plaintiff and Class Members.

## COUNT II –ULTRAZARDOUS ACTIVIES

83.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 69 as if fully set forth here.

84.     The transportation of highly toxic and combustible carcinogens is abnormally dangerous and cannot be made safe by the exercise of the utmost care. Furthermore, the ignition of a million pound chemical burn pit is abnormally dangerous and cannot be made safe by the exercise of the utmost care. The ignition of a million pound chemical burn pit resulted, and continues to result, in emissions highly toxic substances to surrounding communities, which pose a high degree of risk to Plaintiff and Class Members.

85.     There is likelihood that emissions of Vinyl Chloride will result in life-threatening cancer. This risk cannot be eliminated as long as Vinyl Chloride is emitted into populated areas. Likewise, it was completely inappropriate for Defendants to ignite over 1.1 million pounds of Vinyl Chloride in a chemical burn pit and emit large volumes of Vinyl Chloride, Phosgene Gas, and other harmful substances into a populated area.

86.     Defendants' ignition of a 1.1 million pound chemical burn pit created a high degree of risk to those who live in the surrounding area and substantially increased their risk of developing several different types of cancer and diseases.

87.     The activities conducted by Defendants are exceedingly dangerous and offer little or no value to the surrounding community.

88.     Because these activities are ultrahazardous, Defendants are strictly liable for any injuries proximately resulting from them.

89.     As a direct and proximate result of Defendants' ultrahazardous activities, Plaintiff and Class Members were significantly exposed to toxic chemicals, and have suffered discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, diminution in property value, increased risks of future illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

90.     Defendants, through their knowledge of each other's operations relating to Train 32N, and their financial and other interests and incentives in each other's operation of Train 32N, consciously and deliberately pursued a common plan and design to conduct ultrahazardous activities and are therefore jointly liable to Plaintiff and Class Members.

91.     Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT III—NEGLIGENCE

92.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 69 as if fully set forth here.

93.     Each Defendant owed Plaintiff and Class Members a duty to operate their railway enterprise in a manner which would not cause Plaintiff and Class Members injury or harm.

94.     Defendants owed Plaintiffs and Class Members a duty to use reasonable care in the transportation of hazardous materials through East Palestine, Ohio.

95.     Defendants each negligently breached their duty of care by causing Train 32N to derail, by releasing and allowing the release of Vinyl Chloride from Train 32N, and by igniting over 1.1 million pounds of Vinyl Chloride in a chemical burn pit.

96.     Defendants each owed Plaintiff and Class Members a duty of reasonable care and preventing unreasonable harm commensurate with the risk of operating a railroad.

97.     Because of the likelihood of contamination of neighboring areas and exposure to their occupants, Defendants each had a duty to investigate the extent to which Vinyl Chloride released from Train 32N was likely contaminating the air at levels to materially increase nearby residents' (including Plaintiff' and the Class') likelihood and risks of developing cancer and other diseases.

98.     Defendants each negligently breached their duty of reasonable care and preventing unreasonable harm by, among other things:

    a.  Emitting dangerous volumes of Vinyl Chloride, Phosgene Gas, and other harmful chemicals into the environment;

    b.  Failing to employ safe methods to adequately control their railway enterprises and ensure derailments did not occur;

    c.  Failing to ensure the adequacy and operation of emergency pressure relief devices under emergency conditions;

    d.  Failing to ensure equipment such as wheel bearing and axels were in good working condition;

    e.  Failing to utilize corporate policies and procedures that would prevent derailments from occurring;

    f.  Failing to route railcars carrying hazardous materials in such a way as to avoid populated areas;

g.  Failing to have or implement a responsible emergency response plans that would minimize and contain the release of toxic chemicals into the environment;

99.  As a direct and proximate result of Defendants' ultrahazardous activities, Plaintiff and Class Members were significantly exposed to toxic chemicals, and have suffered discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, diminution in property value, increased risks of future illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

100.  Defendants, through their knowledge of each other's operations relating to Train 32N, and their financial and other interests and incentives in each other's operation of Train 32N, consciously and deliberately pursued a common plan and design to conduct ultrahazardous activities and are therefore jointly liable to Plaintiff and Class Members.

101.  Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT IV—WILLFUL & WANTON CONDUCT

102.  Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 69 as if fully set forth here.

103.  At all times relevant, each Defendant owed a duty to refrain from willful and wanton conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and those living in the areas near its railways.

104.  Defendants were at all relevant times aware that their transportation of toxic and combustible carcinogens could result in extreme physical harm to individuals in communities surrounding its railways.

105.     Defendants were at all relevant times aware that the ignition of a 1.1 million pound chemical burn pit would result in extreme physical harm to individuals in communities surrounding its railways.

106.     Notwithstanding its duty, Defendants each breached their duty by, among other things:

      a.  Failing to operate, maintain, inspect and/or repair the railway and railcars in such a way to ensure their safe and proper operation, particularly when transporting hazardous materials such as vinyl chloride, butyl acetate, benzene residue, and other combustible liquids;

      b.  Failing to ensure proper procedures or systems for timely identifying any malfunctions of the railway and railcars in order to prevent or mitigate derailments while transporting such hazardous materials;

      c.  Failing to ensure proper safety procedures in the event of a mechanical malfunction of the railway or railcars while transporting such hazardous materials;

      d.  Failing to ensure a proper mechanism for stopping or slowing malfunctioning railcars in a timely manner to avoid a derailment while transporting such hazardous materials;

      e.  Failing to prevent over-loading the train with too many railcars or materials;

      f.  Failing to load the railcars consistent with accepted practice;

g. Failing to load the railcars in a proper way, avoiding placement of heavier cars in the rear, with particular consideration to whether the planned route is downhill;

h. Failing to transport and dispose of hazardous materials in a manner which would not cause Plaintiffs injury or harm;

i. Igniting over 1 million pounds of DNA mutating and cancer causing chemicals in such a way that thousands of people were likely to be exposed;

107.  Defendants' failures in these and other respects in the face of actual knowledge regarding the risks of unreasonable harm constitute willful, wanton, reckless and outragoues conduct, and demonstrates an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and Class Members

108.  As a direct and proximate result of each Defendant's willful and wanton conduct, Plaintiffs and Class Members were significantly exposed to toxic chemicals, and have suffered discomfort, inconvenience, loss of use and enjoyment of property, emotional distress, diminution in property value, increased risks of future illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

109.  Defendants, through their knowledge of each other's operations relating to Train 32N, and their financial and other interests and incentives in each other's operation of Train 32N, consciously and deliberately pursued a common plan and design to conduct ultrahazardous activities and are therefore jointly liable to Plaintiff and Class Members.

110.  Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT V—PRIVATE NUISANCE

111.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 69 as if fully set forth here.

112.    Defendants have unreasonably contaminated real property within a 30 mile radius of its derailment and million pound chemical burn pit.

113.    Defendants unreasonable use of their property and their unreasonable ignition of a million pound chemical burn pit has unreasonably interfered with the rights of Plaintiffs and Class Members to use and enjoy their property, causing them to suffer injuries, inconvenience, emotional distress, diminution in property value, increased risks of future illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

114.    Plaintiffs, unlike the public generally, have suffered specific injuries as a result of Defendants' tortious conduct, including the pollution of their land and water.

115.    Defendants improper transportation, discharge, and ignition of highly carcinogenic and combustible chemicals constitutes a private nuisance. This nuisance has directly and proximately caused Plaintiffs to presently suffer, and continue suffering in the future, loss of use and enjoyment of their property, discomfort, inconvenience, emotional distress, diminution in property value, increased risks of future illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

116.    Defendants, through their knowledge of each other's operations relating to Train 32N, and their financial and other interests and incentives in each other's operation of Train 32N, consciously and deliberately pursued a common plan and design to conduct ultrahazardous activities and are therefore jointly liable to Plaintiff and Class Members.

117. Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## COUNT VI—TRESPASS

118. Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1 through 69 as if fully set forth here.

119. Defendants, through their activities alleged herein, allowed hazardous materials to enter and contaminate Plaintiffs' property. They intentionally, knowingly, and negligently discharged and released highly toxic chemicals onto the real property of Plaintiffs and Class Members.

120. At all times, Defendants' conduct displayed indifference to and disregard for Plaintiffs' rights to their land.

121. Defendants' intentional, knowing, and negligent discharge of highly toxic chemicals into Plaintiffs' and Class Members' property has interfered with the rights of Plaintiffs to use and enjoy their property and constitutes trespass and continuing trespass. Defendants trespass has substantially impaired Plaintiffs' rights of use and enjoyment of their property and has caused Plaintiffs to presently suffer, and continue suffering in the future, loss of use and enjoyment of their property, discomfort, inconvenience, emotional distress, diminution in property value, increased risks of future illness, and the present need for medical monitoring to ensure early detection of any such disease or illness.

122. Defendants, through their knowledge of each other's operations relating to Train 32N, and their financial and other interests and incentives in each other's operation of Train 32N, consciously and deliberately pursued a common plan and design to conduct ultrahazardous activities and are therefore jointly liable to Plaintiff and Class Members.

123. Defendants' conduct as alleged herein shows that Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiffs' rights so as to warrant the imposition of punitive damages.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all Class Members proposed in this Amended Complaint, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.  For an Order certifying the Class, as defined above, and appointing Plaintiff and his Counsel to represent the Class;

b.  For damages, including compensatory, punitive, and exemplary damages, in an amount determined to be just and reasonable;

c.  For an award in an amount determined just and reasonable to fund a medical monitoring program;

d.  For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

e.  For prejudgment interest on all amounts awarded;

f.  For injunctive and declaratory relief, as allowed by law and

g.  Such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMAND**

Plaintiffs demand a jury trial on all issues so triable.

**FILED:** Dated February 15, 2023.

**Respectfully submitted,**

**MORGAN & MORGAN, P.A.**

BY:     /s/Jesse A. Shore
          JESSE A. SHORE (0091730)

Morgan & Morgan, Kentucky PLLC
300 Madison Avenue, Suite 200
Covington, KY 41011
Telephone: (859) 899-8786
Facsimile: (859) 899-8807
Email: jshore@forthepeople.com

RENE F. ROCHA*
LA Bar No. 34411
MORGAN & MORGAN, COMPLEX
LITIGATION GROUP
400 Poydras Street, Suite 1515
New Orleans, LA 70130
rrocha@ForThePeople.com
P:  (954) 318-0268
F:  (954) 327-3018

FRANK PETOSA*
FL Bar No. 972754
MORGAN & MORGAN, COMPLEX
LITIGATION GROUP
8151 Peters Road
Suite 4000
Plantation, FL 33324
fpetosa@ForThePeople.com
P:  (954) 318-0268
F:  (954) 327-3018

*Attorneys for the Plaintiff and
the Putative Class*

*Pro Hac Vice Pending*