1

```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                         EASTERN DIVISION


 3

     HAROLD R. FEEZLE, et al.,    )  Youngstown, Ohio
 4                                )  Friday, March 31, 2023
                  Plaintiffs,     )  9:18 a.m.
 5                                )
           vs.                    )  Case No. 4:23-cv-242
 6                                )
     NORFOLK SOUTHERN RAILWAY     )
 7   CO., et al.,                 )
                                  )
 8            Defendants.         )
     * * * * * * * * * * * * * *  * * * * * * * * * * * * * *
 9   GRAYCE EISLEY, et al.,       )
                                  )
10            Plaintiffs,         )
                                  )
11         vs.                    )  Case No. 4:23-cv-250
                                  )
12   NORFOLK SOUTHERN RAILWAY     )
     COMPANY,                     )
13                                )
              Defendant.          )
14   * * * * * * * * * * * * * *  * * * * * * * * * * * * * *
     RAY E. HALL, et al.,         )
15                                )
              Plaintiffs,         )
16                                )
           vs.                    )  Case No. 4:23-cv-257
17                                )
     NORFOLK SOUTHERN RAILWAY     )
18   CO., et al.,                 )
                                  )
19            Defendants.         )
     * * * * * * * * * * * * * *  * * * * * * * * * * * * * *
20   ANDREW ERDOS, et al.,        )
                                  )
21            Plaintiffs,         )
                                  )
22         vs.                    )  Case No. 4:23-cv-268
                                  )
23   NORFOLK SOUTHERN CORP.,      )
     et al.,                      )
24                                )
              Defendants.         )
25   * * * * * * * * * * * * * *  * * * * * * * * * * * * * *
```

```
 1    CHASE KINDER, et al.,         )
                                    )
 2            Plaintiffs,           )
                                    )
 3       vs.                        )   Case No. 4:23-cv-292
                                    )
 4    NORFOLK SOUTHERN              )
      CORPORATION, et al.,          )
 5                                  )
              Defendants.           )
 6    * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
      AYSIA CANTERBURY, et al.,     )
 7                                  )
              Plaintiffs,           )
 8                                  )
         vs.                        )   Case No. 4:23-cv-298
 9                                  )
      NORFOLK SOUTHERN              )
10    CORPORATION, et al.,          )
                                    )
11            Defendants.           )
      * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
12    KRISTIN BATTAGLIA,            )
      et al.,                       )
13                                  )
              Plaintiffs,           )
14                                  )   Case No. 4:23-cv-303
         vs.                        )
15                                  )
      NORFOLK SOUTHERN RAILWAY      )
16    COMPANY, et al.,              )
                                    )
17            Defendants.           )
      * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
18    JESSICA DAVIS, et al.,        )
                                    )
19            Plaintiffs,           )
                                    )
20       vs.                        )   Case No. 4:23-cv-308
                                    )
21    NORFOLK SOUTHERN RAILWAY      )
      COMPANY, et al.,              )
22                                  )
              Defendants.           )
23    * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

24

25
```

```
 1    TINA IBEL, et al.,            )
                                    )
 2              Plaintiffs,         )
                                    )
 3         vs.                      )   Case No. 4:23-cv-315
                                    )
 4    NORFOLK SOUTHERN              )
      CORPORATION, et al.,          )
 5                                  )
                Defendants.         )
 6    * * * * * * * * * * * * * * * * * * * * * * * * * * * *
      KAYLA BAKER, et al.,          )
 7                                  )
                Plaintiffs,         )
 8                                  )
         vs.                        )   Case No. 4:23-cv-324
 9                                  )
      NORFOLK SOUTHERN              )
10    CORPORATION, et al.,          )
                                    )
11              Defendants.         )
      * * * * * * * * * * * * * * * * * * * * * * * * * * * *
12    SCOTT SNYDER, et al.,         )
                                    )
13              Plaintiffs,         )
                                    )
14       vs.                        )   Case No. 4:23-cv-344
                                    )
15    NORFOLK SOUTHERN RAILWAY      )
      CO., et al.,                  )
16                                  )
                Defendants.         )
17    * * * * * * * * * * * * * * * * * * * * * * * * * * * *
      AMY DETTMER, et al.,          )
18                                  )
                Plaintiffs,         )
19                                  )
         vs.                        )   Case No. 4:23-cv-345
20                                  )
      NORFOLK SOUTHERN RAILWAY      )
21    CO., et al.,                  )
                                    )
22              Defendants.         )
      * * * * * * * * * * * * * * * * * * * * * * * * * * * *
23

24

25
```

```
 1   WILLIAM LEE FISHER,            )
     et al.,                        )
 2                                  )
                 Plaintiffs,        )
 3                                  )   Case No. 4:23-cv-350
          vs.                       )
 4                                  )
     NORFOLK SOUTHERN               )
 5   CORPORATION, et al.,           )
                                    )
 6              Defendants.         )
     * * * * * * * * * * * * * * *  * * * * * * * * * * * * * *
 7   ROBERT ATKINSON, et al.,       )
                                    )
 8               Plaintiffs,        )
                                    )
 9        vs.                       )   Case No. 4:23-cv-363
                                    )
10   NORFOLK SOUTHERN               )
     CORPORATION, et al.,           )
11                                  )
                Defendants.         )
12   * * * * * * * * * * * * * * *  * * * * * * * * * * * * * *
     CHRISTINA BODNAR, et al.,      )
13                                  )
                 Plaintiffs,        )
14                                  )
          vs.                       )   Case No. 4:23-cv-380
15                                  )
     NORFOLK SOUTHERN               )
16   CORPORATION, et al.,           )
                                    )
17              Defendants.         )
     * * * * * * * * * * * * * * *  * * * * * * * * * * * * * *
18   ROSEMARY MOZUCH, et al.,       )
                                    )
19               Plaintiffs,        )
                                    )
20        vs.                       )   Case No. 4:23-cv-415
                                    )
21   NORFOLK SOUTHERN               )
     CORPORATION, et al.,           )
22                                  )
                Defendants.         )
23   * * * * * * * * * * * * * * *  * * * * * * * * * * * * * *

24

25
```

```
1    BRENDA SMITH, et al.,        )
                                  )
2              Plaintiffs,        )
                                  )
3         vs.                     )    Case No. 4:23-cv-429
                                  )
4    NORFOLK SOUTHERN             )
     CORPORATION, et al.,         )
5                                 )
               Defendants.        )
6    * * * * * * * * * * * * * * * * * * * * * * * * * * *
     JON LUKE AFFELTRANGER,       )
7    et al.,                      )
                                  )
8              Plaintiffs,        )
                                  )    Case No. 4:23-cv-440
9         vs.                     )
                                  )
10   NORFOLK SOUTHERN             )
     CORPORATION, et al.,         )
11                                )
               Defendants.        )
12   * * * * * * * * * * * * * * * * * * * * * * * * * * *
     GIOVANNI IRIZARRY,           )
13   et al.,                      )
                                  )
14             Plaintiffs,        )
                                  )
15        vs.                     )    Case No. 4:23-cv-479
                                  )
16   NORFOLK SOUTHERN             )
     CORPORATION, et al.,         )
17                                )
               Defendants.        )
18   * * * * * * * * * * * * * * * * * * * * * * * * * * *
     FRANK POLICARO, et al.,      )
19                                )
               Plaintiffs,        )
20                                )
          vs.                     )    Case No. 4:23-cv-495
21                                )
     NORFOLK SOUTHERN             )
22   CORPORATION, et al.,         )
                                  )
23             Defendants.        )
     * * * * * * * * * * * * * * * * * * * * * * * * * * *
24

25
```

```
 1    CERAMFAB, INC., et al.,      )
                                   )
 2                 Plaintiffs,     )
                                   )
 3        vs.                      )    Case No. 4:23-cv-509
                                   )
 4    NORFOLK SOUTHERN             )
      CORPORATION, et al.,         )
 5                                 )
                 Defendants.       )
 6    * * * * * * * * * * * * * * * * * * * * * * * * * * * *
      EDWARD E. BARNHOUSE,         )
 7    et al.,                      )
                                   )
 8                 Plaintiffs,     )
                                   )
 9        vs.                      )    Case No. 4:23-cv-510
                                   )
10    NORFOLK SOUTHERN             )
      CORPORATION, et al.,         )
11                                 )
                 Defendants.       )
12    * * * * * * * * * * * * * * * * * * * * * * * * * * * *
      ROBERT KURTZ, JR.,          )
13    et al.,                      )
                                   )
14                 Plaintiffs,     )
                                   )
15        vs.                      )    Case No. 4:23-cv-529
                                   )
16    NORFOLK SOUTHERN             )
      CORPORATION, et al.,         )
17                                 )
                 Defendants.       )
18    * * * * * * * * * * * * * * * * * * * * * * * * * * * *
      MICHAEL BUNTS, et al.,       )
19                                 )
                 Plaintiffs,       )
20                                 )
          vs.                      )    Case No. 4:23-cv-586
21                                 )
      NORFOLK SOUTHERN RAILWAY     )
22    CO., et al.,                 )
                                   )
23                 Defendants.     )
      * * * * * * * * * * * * * * * * * * * * * * * * * * * *
24

25
```

```
1    DAVIDSON CULIXTE,             )
                                   )
2              Plaintiff,          )
                                   )
3        vs.                       )   Case No. 4:23-cv-600
                                   )
4    NORFOLK SOUTHERN RAILWAY      )
     COMPANY, et al.,              )
5                                  )
               Defendants.         )
6    * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
     JERROLD GURNEY, et al.,       )
7                                  )
               Plaintiffs,         )
8                                  )
         vs.                       )   Case No. 4:23-cv-601
9                                  )
     NORFOLK SOUTHERN RAILWAY      )
10   COMPANY, et al.,              )
                                   )
11             Defendants.         )
     * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
12   TIM HAMILTON, et al.,         )
                                   )
13             Plaintiffs,         )
                                   )
14       vs.                       )   Case No. 4:23-cv-602
                                   )
15   NORFOLK SOUTHERN RAILWAY      )
     COMPANY, et al.,              )
16                                 )
               Defendants.         )
17   * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
     JIBRIL EMMANUEL HAMMOND,      )
18                                 )
               Plaintiff,          )
19                                 )
         vs.                       )   Case No. 4:23-cv-603
20                                 )
     NORFOLK SOUTHERN RAILWAY      )
21   COMPANY, et al.,              )
                                   )
22             Defendants.         )
     * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
23

24

25
```

```
1    SCOTT McALLER, et al.,        )
                                   )
2             Plaintiffs,          )
                                   )
3        vs.                       )   Case No. 4:23-cv-604
                                   )
4    NORFOLK SOUTHERN RAILWAY      )
     COMPANY, et al.,              )
5                                  )
              Defendants.          )
6    * * * * * * * * * * * * * * * * * * * * * * * * * * * *
     MICHAEL LOYD, et al.,         )
7                                  )
              Plaintiffs,          )
8                                  )
         vs.                       )   Case No. 4:23-cv-634
9                                  )
     NORFOLK SOUTHERN RAILWAY      )
10   COMPANY, et al.,              )
                                   )
11            Defendants.          )
     * * * * * * * * * * * * * * * * * * * * * * * * * * * *
12
                     TRANSCRIPT OF PROCEEDINGS
13           BEFORE THE HONORABLE BENITA Y. PEARSON
                    UNITED STATES DISTRICT JUDGE
14
                            HEARING
15
                   HELD VIA VIDEOCONFERENCE
16

17

18

19

20
                     MARY L. UPHOLD, RDR, CRR
21   Thomas D. Lambros Federal Building and U.S. Courthouse
                    125 Market Street, Room 337
22                 Youngstown, Ohio  44503-1780
                          (330) 884-7424
23                Mary_Uphold@ohnd.uscourts.gov

24       Proceedings recorded by mechanical stenography;
     transcript produced by computer-aided transcription.
25                          - - -
```

**APPEARANCES:**

**For the Plaintiffs - Case Number 4:23-cv-242:**
    Simmons Hanly Conroy
    **By:**  Jayne Conroy, Esq.
    One Court Street
    Alton, Illinois  62002
    (618) 259-2222
    jconroy@simmonsfirm.com

**For the Plaintiffs - Case Number 4:23-cv-250:**
    Law Office of Calvin C. Fayard, Jr.
    **By:**  Calvin C. Fayard, Jr., Esq.
    P.O. Box 458
    Springfield, Louisiana  70462
    (225) 294-6600
    calvin@fayardlaw.com

    Fayard & Honeycutt
    **By:**  David Blayne Honeycutt, Esq.
    519 Florida Avenue, SW
    Denham Springs, Louisiana  70726
    (225) 664-0304
    dbhoneycutt@fayardlaw.com

    Bryant Law Center
    **By:**  Emily Ward Roark, Esq.
    601 Washington Street
    Paducah, Kentucky  42003
    (270) 442-1422
    emily.roark@bryantpsc.com

    Law Office of Gary A. Davis
    **By:**  Gary A. Davis, Esq.
    Suite 206
    21 Battery Park Avenue
    Ashville, North Carolina  28801
    (828) 622-0044
    gadavis@enviroattorney.com

    Bryant Law
    **By:**  Mark P. Bryant, Esq.
    601 Washington Street
    Paducah, Kentucky  42003
    (270) 444-1422
    mark.bryant@bryantpsc.com

1     APPEARANCES (CONTINUED):

2     **For the Plaintiffs - Case Number 4:23-cv-250 (Continued)**:
            Strauss & Troy
3           **By:**  Ronald R. Parry, Esq.
            Suite 400
4           150 East Fourth Street
            Cincinnati, Ohio  45202
5           (513) 621-2120
            rrparry@strausstroy.com

6
            Strauss & Troy
7           **By:**  Robert R. Sparks, Esq.
            Suite 400
8           150 East Fourth Street
            Cincinnati, Ohio  45202
9           (513) 621-2120
            rrsparks@strausstroy.com

10
      **For the Plaintiffs - Case Number 4:23-cv-268:**
11          Grant & Eisenhofer P.A.
            **By:**  M. Elizabeth Graham, Esq.
12          123 S. Justison Street, 6th Floor
            Wilmington, Delaware  19801
13          (302) 622-7000
            egraham@gelaw.com

14
            Burg Simpson Eldredge Hersh & Jardine
15          **By:**  Seth A. Katz, Esq.
            40 Inverness Drive, E
16          Englewood, Colorado  80111
            (303) 708-5595
17          skatz@burgsimpson.com

18    **For the Plaintiffs - Case Number 4:23-cv-298:**
            Morgan & Morgan
19          **By:**  T. Michael Morgan, Esq.
            Suite 1600
20          20 North Orange Avenue
            Orlando, Florida  32801
21          (407) 236-5998
            mmorgan@forthepeople.com

22

23

24

25

```
 1       APPEARANCES (CONTINUED):

 2       For the Plaintiffs - Case Number 4:23-cv-308:
              Levin Sedran & Berman
 3            By:  Charles E. Schaffer, Esq.
              Suite 500
 4            510 Walnut Street
              Philadelphia, Pennsylvania  19106
 5            (215) 592-1500
              cschaffer@lfsblaw.com
 6
         For the Plaintiffs - Case Number 4:23-cv-315:
 7            Markovits, Stock & DeMarco
              By:  Terence Coates, Esq.
 8            Suite 530
              119 East Court Street
 9            Cincinnati, Ohio  45202
              (513) 651-3700
10            tcoates@msdlegal.com

11       For the Plaintiffs - Case Number 4:23-cv-324:
              Lieff, Cabraser, Heimann & Bernstein
12            By:  Mark P. Chalos, Esq.
              Suite 1650
13            One Nashville Place
              150 Fourth Avenue, N
14            Nashville, Tennessee  37219
              (615) 313-9000
15            mchalos@lchb.com

16            Peiffer Wolf Carr Kane Conway & Wise
              By:  Ashlie Case Sletvold, Esq.
17            Suite 108
              6370 Som Center Road
18            Cleveland, Ohio  44139
              (216) 589-9280
19            asletvold@peifferwolf.com

20       For the Plaintiffs - Case Numbers 4:23-cv-344 and
         4:23-cv-345:
21            Motley Rice
              By:  Vincent L. Greene, IV, Esq.
22            5th Floor
              40 Westminster Street
23            Providence, Rhode Island  02903
              (401) 457-7730
24            vgreene@motleyrice.com

25
```

1   APPEARANCES (CONTINUED):

2   **For the Plaintiffs - Case Number 4:23-cv-350:**
        Hagens Berman Sobol Shapiro
3       **By:**  Kristen Anne Johnson, Esq.
        5th Floor
4       1 Faneuil Hall Square
        Boston, Massachusetts  02109
5       (617) 482-3700
        kristenj@hbsslaw.com

6
        Johnson & Johnson
7       **By:**  Nils Paul Johnson, Jr., Esq.
        12 West Main Street
8       Canfield, Ohio  44406
        (330) 533-1921
9       NilsPeter@JandJOhio.com

10      Johnson & Johnson
        **By:**  Nils Peter Johnson, Esq.
11      12 West Main Street
        Canfield, Ohio  44406
12      (330) 533-1921
        nilspeter@johnsonandjohnsonohio.com

13
        Hagens Berman Sobol Shapiro
14      **By:**  Steve W. Berman, Esq.
        Suite 2000
15      1301 Second Avenue
        Seattle, Washington  98101
16      (206) 623-7292
        steve@hbsslaw.com

17
        Hagens Berman Sobol Shapiro
18      **By:**  Whitney K. Siehl, Esq.
        Suite 2410
19      455 North Cityfront Plaza Drive
        Chicago, Illinois  60611
20      (708) 628-4959
        whitneys@hbsslaw.com

21
        Goldenberg Schneider
22      **By:**  Jeffrey S. Goldenberg, Esq.
        Suite 490
23      4445 Lake Forest Drive
        Cincinnati, Ohio  45242
24      (513) 345-8291
        jgoldenberg@gs-legal.com

25

```
 1    APPEARANCES (CONTINUED):

 2    For the Plaintiffs - Case Number 4:23-cv-415:
           Law Office of Daniel R. Karon
 3         By:  Daniel R. Karon, Esq.
           Suite 200
 4         700 St. Clair Avenue, W
           Cleveland, Ohio  44113
 5         (216) 622-1851
           dkaron@karonllc.com
 6
           Berger Montague PC
 7         By:  Shanon J. Carson, Esq.
           1818 Market Street, Suite 3600
 8         Philadelphia, Pennsylvania  19103
           (215) 875-4656
 9         scarson@bm.net

10         Berger Montague PC
           By:  Dena Young, Esq.
11         1818 Market Street, Suite 3600
           Philadelphia, Pennsylvania  19103
12         (215) 875-4692
           dyoung@bm.net

13
      For the Defendants - Case Number 4:23-cv-440:
14         Seeger Weiss
           By:  Christopher A. Seeger, Esq.
15         6th Floor
           55 Challenger Road
16         Ridgefield Park, New Jersey  07660
           (973) 639-9100
17         cseeger@seegerweiss.com

18    For the Plaintiffs - Case Number 4:23-cv-509:
           CORY WATSON, P.C.
19         By:  R. Andrew Jones, Esq.
           Suite 200
20         2131 Magnolia Avenue South
           Birmingham, Alabama  35205
21         (205) 328-2200
           ajones@corywatson.com
22

23

24

25
```

1    APPEARANCES (CONTINUED):

2    **For the Plaintiffs - Case Number 4:23-cv-510:**
          Weitz & Luxenberg
3          **By:**  James J. Bilsborrow, Esq.
          700 Broadway
4          New York, New York  10003
          (212) 558-5500
5          jbilsborrow@weitzlux.com

6    **For the Plaintiffs - Case Number 4:23-cv-586:**
          Zagrans Law Firm
7          **By:**  Eric H. Zagrans, Esq.
          Suite 302
8          5077 Waterford Drive
          Elyria, Ohio  44035
9          (216) 771-1000
          eric@zagrans.com

10

     **For the Plaintiff - Case Numbers 4:23-cv-600, 4:23-cv-601,**
11   **4:23-cv-602, 4:23-cv-603 and 4:23-cv-604:**
          Katherine E. Rudzik, Esq.
12         Suite 904
          26 Market Street
13         Youngstown, Ohio  44503
          (330) 744-2126
14         krudzik@aol.com

15   **For the Plaintiffs - Case Number 4:23-cv-634:**
          Colley, Shroyer & Abraham
16         **By:**  Tyler Shroyer, Esq.
          2nd Floor
17         536 South High Street
          Columbus, Ohio  43215
18         (614) 228-6453
          tshroyer@csajustice.com

19
          Colley, Shroyer & Abraham
20         **By:**  Michael T. Rapier, Esq.
          2nd Floor
21         536 South High Street
          Columbus, Ohio  43215
22         (614) 228-6453
          mrapier@csajustice.com

23

24

25

1    **APPEARANCES (CONTINUED):**

2    **For the Plaintiffs - Case Number 4:23-cv-634 (Continued):**
          Colley, Shroyer & Abraham
3         **By:**  Daniel N. Abraham, Esq.
          2nd Floor
4         536 South High Street
          Columbus, Ohio  43215
5         (614) 228-6453
          dabraham@csajustice.com
6
          Law Office of D. David Altman
7         **By:**  Justin D. Newman, Esq.
          Suite 200W
8         15 East Eighth Street
          Cincinnati, Ohio  45202
9         (513) 721-2180
          jnewman@environlaw.com
10

     **For All Defendants:**
11        Dickie, McCamey & Chilcote, P.C.
          **By:**  J. Lawson Johnston, Esq.
12        Two PPG Place, Suite 400
          Pittsburgh, Pennsylvania  15222-5402
13        (412) 281-7272
          ljohnston@dmclaw.com
14
          Dickie, McCamey & Chilcote, P.C.
15        **By:**  Scott D. Clements, Esq.
          Two PPG Place, Suite 400
16        Pittsburgh, Pennsylvania  15222-5402
          (412) 281-7272
17        sclements@dmclaw.com

18   **Also Present:**

19   **Feezle Leadership Group:**
          Zoll & Kranz, LLC
20        **By:**  Michelle L.  Kranz, Esq.
          Plaintiffs' Liaison Counsel
21        6620 West Central Avenue, Suite 100
          Toledo, Ohio  43617
22        (419) 841-9623
          michelle@toledolaw.com
23

24

25

1      **APPEARANCES (CONTINUED):**

2      **Also Present:**

3      **Team Ohio/Fisher Leadership Group:**
       Elizabeth A. Bernard, LLC
4      **By:**  Elizabeth A. Bernard, Esq.
       Plaintiffs' Community Liaison
5      Suite 105A
       4137 Boardman-Canfield Road
6      Canfield, Ohio  44406
       (330) 286-0474
7      EAB@ElizabethBernardLaw.com

8      Karen Matthews
       Ohio Attorney General's Office
9      Environmental Enforcement

10     Listen-Only Conference Line

11
                                   - - -
12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

- - -

1        THE CLERK:  The matter before the court is Case

Number 4:23-cv-0242, Harold Feezle, and others versus

Norfolk Southern Railway Company, and others, as well as the

other 29 cases.

        THE COURT:  Good morning, everyone.  For those of

you who are able to stand or who needed to because you

weren't already in a standing posture, please feel free to

retake your seats.  This is Judge Pearson speaking.

        I can see that there are many of you there.

Pardon our brief delay in starting.  I am still having some

technology issues.  But if you're seeing me and hearing me,

it will satisfy me.

        And let me test that by inviting certain of you

who I have given responsibility for making sure that the

many of you were invited to this Zoom conference introduce

yourselves.

        Starting with the Feezle Leadership Group as

proposed, will you please introduce yourselves for the

record?

        MR. KATZ:  Good morning, Your Honor.  Seth Katz

from Burg Simpson.  Good to see you again.  I am going to

introduce the members of the Feezle Leadership Group so that

this is done in an orderly fashion.

MARY L. UPHOLD, RDR, CRR       (330) 884-7424

1          With me is Attorney Beth Graham from Grant &

2    Eisenhofer, Jayne Conroy from Simmons Hanly Conroy, Mike

3    Morgan from the Morgan & Morgan firm.

4          And then our proposed Plaintiffs' Executive

09:19:57  5    Committee members that are with us, Christopher Seeger, who

6    we also have asked to address the court briefly if you'll

7    allow it at some point; Michelle Kranz from Zoll & Kranz in

8    Toledo, Ohio, who is also our proposed plaintiffs' liaison

9    counsel; Mark Chalos from the Lieff Cabraser firm; Vincent

09:20:17  10   Greene from Motley Rice; James Bilsborrow from the Weitz &

11   Luxenberg firm; and Charles Schaffer from Levin Sedran &

12   Berman in Pennsylvania.  And you'll also see on the camera

13   our proposed co-liaison from the Plaintiffs' Steering

14   Committee, Ashlie Case Sletvold.

09:20:38  15        And we've also got a non-video listen-only phone

16   line set up which has the other members of the proposed

17   Steering Committee, Working Committee and other lawyers with

18   later-filed cases that we've been coordinating with.

19        THE COURT:  Fantastic.  Thank you, Mr. Katz.  I

09:20:56  20   heard you loudly and clearly.  I was able to identify

21   certain of those whose names you mentioned.  And I have made

22   a note of the name of Attorney Christopher Seeger and will

23   allow him to address me.  And you might, or he might have to

24   prompt me at the appropriate time.

09:21:16  25        Fair enough, Mr. Katz?

1      MR. KATZ:  Very well, Your Honor.

2      THE COURT:  All right.  Team Ohio, the Fisher

3  Leadership Team, will one of you kindly do what Mr. Katz has

4  done, introduce those of you present with the court today,

09:21:29  5  please?

6      MR. BERMAN:  Yes, Your Honor.  Good morning.  This

7  is Steve Berman.  Good to see you.

8      THE COURT:  Thank you.

9      MR. BERMAN:  With me from Team Ohio today is my

09:21:40 10  partner, Kristen Johnson.

11      Also with me is Jeffrey Goldenberg, who was

12  actually going to do some of our presentation.  I don't know

13  if you can permit him to appear by video or not.

14      Also with me are members of the committee from the

09:21:57 15  Strauss Troy firm; and Mr. Nils Johnson from the Johnson &

16  Johnson firm; Ms. Elizabeth Bernard; there are lawyers here

17  from the Markovits Stock firm, and from -- Calvin Fayard is

18  here; and lawyers from the Bryant Law Center.  So several.

19      THE COURT:  Thank you.

09:22:22 20      MR. BERMAN:  Thank you, Your Honor.

21      THE COURT:  Exactly, several.  Thank you for that,

22  Mr. Berman.  By my words now, I will ask my staff and Madam

23  IT to do what's necessary to allow Attorney Goldenberg to

24  appear by video, if he is not already.

09:22:38 25      Attorney, don't worry if that means you

1    reconnecting in a different way. I am sure it will be

2    attended to quickly so that you can assist your proposed

3    team in the way that's most effective. Thank you for that.

4         Now, for the Cory Watson attorneys, counsel, will

09:22:58 5    you please do the same, introduce yourself and anyone else

6    assisting you today?

7         I am looking for Attorney Jon Conlin when I make

8    that request. Are you present with us, sir?

9         There it is. Meanwhile, Mr. Goldenberg has video.

09:23:22 10    Welcome.

11         MR. GOLDENBERG: Good morning, Your Honor.

12         THE COURT: Good morning.

13         Does anyone know, have you had any interactions

14    via this Zoom platform or otherwise with Attorney Jon Conlin

09:23:35 15    this morning?

16         MR. KATZ: Your Honor, we have not had contact

17    with Mr. Conlin this morning. We did speak with him after,

18    in the CeramFab case, the TRO he brought, we did coordinate

19    with him. I know he was on the e-mail that did receive the

09:23:50 20    Zoom information. But we haven't spoken with him this

21    morning.

22         THE COURT: Thank you. If Mr. Conlin presents

23    himself and one of you notice, including my staff, please

24    alert me.

09:24:05 25         And I would ask, Mr. Katz, is it possible for you

1    to dispatch maybe a staff member not assisting you during

2    this conference to reach out to Mr. Conlin so we can make

3    sure that all is well with him?  He might be having a

4    difficulty.  He might be in the group of those that doesn't

09:24:24  5    have audio or video access, and I'd just hate for him to be

6    absent due to some technical glitch.

7              Can you help in that way?

8              MR. KATZ:  Absolutely, Your Honor.  We're on it.

9              THE COURT:  All right.  Meanwhile, certainly

09:24:41  10    important to today's hearing is defense counsel.  Will you

11    please introduce yourselves for the record?

12             MR. JOHNSTON:  Yeah, Lawson Johnston on behalf of

13    the Norfolk defendants, Your Honor.

14             THE COURT:  Good morning.

09:24:57  15             MR. JOHNSTON:  Good morning.

16             THE COURT:  And usually Mr. Clements is with you.

17    I see you, Mr. Clements.  Are you able to hear and see me?

18             MR. CLEMENTS:  Yes, Your Honor.  Good morning.

19    Scott Clements from Norfolk Southern Railway Company and

09:25:08  20    Norfolk Southern Corporation.

21             THE COURT:  Good morning.  Is there anyone with

22    you, Messrs. Johnston and Clements today?

23             MR. JOHNSTON:  No.

24             THE COURT:  All right.  Thank you for that.

09:25:17  25             And I do appreciate the many other of you who are

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1   interested and active in this litigation, allowing

2   yourselves to be present in a way that won't allow you to

3   speak with the court directly, but I'm sure that you know

4   the opportunities, even if by a chat feature, to speak with

09:25:37  5   those who you have allowed to speak with the court on your

6   behalf.  And if there is a need for me to pause to allow

7   those chat features to be reviewed before any counsel who

8   speaks concludes his or her comments, say so and I'll allow

9   it.  That's only fair.

09:25:58  10   We have an aggressive agenda, but I do think it

11   can be managed and managed efficiently.

12   My hope today is to take up several topics, one of

13   which is, as indicated in the order setting this hearing, to

14   discuss with you further the potential consolidation of when

09:26:22  15   I issued the order was then 22 cases.  I think if my count

16   is still accurate, it's now 30 individual cases residing on

17   my docket.

18   And we do know that the 30 on my docket are not

19   the only that exist or that have been filed in response to

09:26:37  20   the derailment, but I do believe, as I'm aware at this

21   moment I speak with you, those are the ones that are most

22   similar resulting from the same action that's brought the 30

23   cases to my docket.

24   So we'll talk about the partial consolidation --

09:26:56  25   pardon me, the potential consolidation, the filing of a

1    master consolidated complaint or what might otherwise be

2    considered an amended complaint, and responses to that.

3           But an important task I must undertake, and I

4    choose to undertake it first, is the obligation I have

09:27:19    5    pursuant to Rule 23(g) when I am considering an amended or

6    consolidated complaint, to take into consideration the

7    interests of all putative class members.

8           And as I'm sure each of you present, especially

9    those who will speak today, are aware of the obligations

09:27:44    10    placed on the court by Rule of Civil Procedure 23, and

11    particularly (g)(1), regarding appointing class counsel.

12           I have studied those requirements and I'll remark

13    that in response to my order, the motion filed to appoint

14    interim counsel, and that is the correct terminology,

09:28:09    15    because it would be interim class counsel, because this is

16    being done in advance of the certification of any now

17    putative class action.

18           So, Messrs. Johnston and Clements, I appreciate

19    your cooperativeness, but I do understand that we're taking

09:28:27    20    care of some important procedural matters without there

21    being any expectation that the defense has conceded that

22    there will be a Rule 23 class certified.

23           So having had the ability to study what's docketed

24    as ECF Number 25 in the Feezle case, the first-filed case,

09:28:49    25    which is the case on which I asked that you file your motion

1    and also status report, I'd like to first take up the matter

2    of the appointment of class counsel, especially that of

3    interim counsel.

4              And please know that I am privileged, the citizens

09:29:10   5    of the Northern District of Ohio, and particularly those who

6    live in East Palestine, are privileged to have more than one

7    set of counsel that's adequate, to use the terminology of

8    Rule 23, and interested in what's inevitably going to be a

9    very complex and difficult task.

09:29:34  10              And as Rule 23 requires, when I have more than one

11    interested set of counsel, my job is to appoint that best

12    able to represent the interests of the class members.

13              So with that, I'd like you, and I'll allow you by

14    prospective team, that being Feezle Leadership first, Team

09:30:02  15    Ohio, and then hopefully I'll have the Cory Watson attorneys

16    present to say what you'd like to amplify what you've

17    written.

18              And I say amplify, emphasize, because I've read

19    it, and the myriad attachments.  I've done my best to make

09:30:17  20    myself well acquainted with what you shared, and I

21    appreciate the time and effort to pull those materials

22    together.  But it's up to you to draw my attention to that

23    which, when I consider the factors in Rule 23, allows me to

24    identify the best able to serve the putative class.

09:30:40  25              With that, is there any question, anything about

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

1   the nature of your presentation that you'd like to ask me

2   about before you start making those presentations?

3          And again, just to keep it orderly, I will ask

4   team Feezle, any such question, anything that might make

09:30:59   5   your presentation easier?

6          MR. KATZ:  No, thank you, Your Honor.  We are

7   prepared to proceed.

8          THE COURT:  Thank you for that.

9          Team Ohio or Fisher Leadership Team, anything I

09:31:09   10   can ask or any technological needs you might want to ask

11   about before we start the presentations?

12          MR. BERMAN:  No, Your Honor.  Steve Berman.  We're

13   ready to go when you are.

14          THE COURT:  Thank you.  And just because I'm

09:31:23   15   hoping Mr. Conlin has appeared, any word on Attorney Jon

16   Conlin, who represents CeramFab, et al., and the Cory Watson

17   attorneys team, any word on him yet?

18          MR. JONES:  Your Honor, this is Andy Jones on

19   behalf of Jon Conlin and Cory Watson this morning.  I

09:31:46   20   apologize.  We had connectivity issues.  The only question I

21   have is I have tried to turn on my camera.  I would love to

22   turn that on for you, but it says the host has stopped my

23   ability to do that.

24          THE COURT:  And that might be.  If it wasn't made

09:32:00   25   known that you -- and it's Attorney Helms, is it?

1          MR. JONES:  I'm sorry, Attorney Andy Jones.

2          THE COURT:  Andy Jones, pardon that.  What I will

3     do now is ask my staff to assist you.  And do be aware that

4     that assistance, so as to not interfere with the record,

09:32:18  5     might -- there you are, it's done.

6          Okay.  Now, are you the speaker for the Cory

7     Watson attorneys, sir?

8          MR. JONES:  Yes, Your Honor, I am.

9          THE COURT:  Fantastic.  So we'll go in order, in

09:32:30  10     the order presented in the motion to appoint interim class

11     counsel:  Feezle Leadership, Team Ohio/Fisher, and then Cory

12     Watson, attorneys presented by Mr. Attorney Andy Jones.

13          With that, why don't we start.  Feezle Leadership,

14     you have my attention.

09:32:51  15          MR. KATZ:  Thank you, Your Honor.  Seth Katz from

16     Burg Simpson for the Feezle Leadership Group.

17          Your Honor, as you pointed out, I don't intend to

18     rehash what's in our papers, but I do think that going

19     through how we built the Feezle Leadership team will give

09:33:05  20     you an idea of why the Feezle Leadership Group is the group

21     best able to represent all the different variety of

22     plaintiffs in the putative class.

23          We listened to Your Honor at our various hearings,

24     including the March 1st hearing, where you advised us of

09:33:29  25     your views that we can always find roles for those who want

1    to be robustly employed and the need to have foot soldiers

2    to carry out the tasks that we will be assigned if we're

3    appointed as interim class counsel.

4         So we set out to build an inclusive leadership

09:33:48  5    team that was led at the top by very experienced lawyers,

6    committed lawyers, and law firms that have a long track

7    record of seeing cases to the end, handling very complex

8    cases.

9         And we think we've accomplished that with a great

09:34:02  10   mix of local law firms, both Ohio and Pennsylvania, because

11   Ohio communities are not the only ones impacted, as well as

12   national law firms that have the resources, the knowledge

13   and the experience to guide this case to where it needs to

14   go.

09:34:21  15        As you're aware from the papers, we held a meeting

16   of all the lawyers we were aware of in Cleveland on March

17   3rd.  Members of the Fisher Leadership Group were invited

18   and attended.  And our goal there was to try to build

19   consensus.  But also to be inclusive, make sure everybody

09:34:44  20   knew what was going on.

21        And as more cases got filed after March 3rd,

22   Ms. Graham and I contacted those lawyers, as the court asked

23   us to do, and we think we've carried out that assignment

24   well.  We hope the court sees it the same way.

09:35:01  25        And we spoke with the lawyers in those cases, and

1    we evaluated their interest level in participating, their

2    backgrounds, and what they would bring to the case to help

3    us build what really amounts to a law firm comprised of

4    other law firms to adequately handle this case.

09:35:22   5          As the court knows from reading the papers in

6    footnote 9, we offered to include members of the Fisher

7    Leadership Group in our organization.

8          We actually created the position of Community

9    Liaison, which we've never had in a case before, because of

09:35:42   10   the need for local, on-the-ground lawyers with knowledge of

11   the case and what was going on, to be able to communicate

12   with the community.

13          We even discussed it with Mr. Nils Johnson at the

14   March 3rd meeting.

09:35:55   15          This is a big case, as Your Honor noted.  It's a

16   very important case.  And there's going to be a lot of work.

17   And the work needs to get done regardless of which

18   leadership group Your Honor appoints, regardless of the

19   number of lawyers involved.  The work has to get done.

09:36:12   20          THE COURT:  Mr. Katz, Judge Pearson here.  And

21   sorry I didn't warn you of this.  You might have become

22   accustomed that it's one thing I do to keep pace to

23   understand the information as I receive it, is to

24   occasionally stop the speaker to ask a question.  So

09:36:31   25   hopefully I don't throw any of you off when I do that, but

1    it's important, and I appreciate you emphasizing, drawing my

2    attention to note 9.

3         For those of you keeping pace with us, note 9 is

4    at the bottom of page 15 of docket number ECF with

09:36:50  5    electronically file number 25.  And it's also page ID number

6    162 in the Feezle case.

7         I wonder, and I wondered as I studied these

8    papers, if -- and so that all of you know, what I will do

9    today is to receive information, take some time, not long.

09:37:13  10    I am pushing you, and I will continue to push myself, but I

11    will take some time to consider how what I've read, what

12    I've heard today matches up with the Rule 23(g) obligations.

13         One thought I had that maybe you can help me with

14    today on behalf of the Feezle Leadership, after I've made my

09:37:32  15    determination, and I will, while I'll issue minutes today,

16    I'll issue an order after today, early part of next week is

17    my anticipation, identifying what I've decided based on all

18    that I have in terms of the class counsel structure, and the

19    attorneys to be a part of that leadership.

09:37:58  20         Is there still an opportunity for the suggestion

21    made in paragraph 9?

22         MR. KATZ:  Your Honor, yes.  And, in fact, as

23    recently as Wednesday evening, Ms. Conroy and Mr. Goldenberg

24    had a conversation, and we proposed in an e-mail to

09:38:22  25    Mr. Goldenberg that we would add him to our Executive

1    Committee.  We would add Mr. Parry to our Steering

2    Committee.  And we would add Mr. Nils Johnson to be a

3    Community Liaison with Attorney Nick Amato, who we already

4    have in that position.

09:38:40  5        So there is still an opportunity -- our view is

6    one of inclusiveness, and to make sure that this community

7    gets the best representation possible.  There is going to be

8    a lot of work.  And the work needs to be done.

9        So the short answer is yes, and the longer answer

09:38:57  10   is, we've continued to keep that opportunity open, as well

11   as other members of the Fisher Leadership Group that are

12   interested in working cooperatively, having working roles.

13       THE COURT:  All right.  Let me ask this clarifying

14   question.  And it will require your response, but quite

09:39:18  15   possibly even a response from Messrs. Goldenberg, Parry and

16   Johnson.  And I know there are two Nils Johnsons.  I'm not

17   particularly certain right now which one of the two you are

18   referring to.

19       As I consider, as we talk today, but later, when I

09:39:36  20   contemplate and ultimately rule by early next week, may I

21   consider these enlargements of the Executive, Steering and

22   Community Liaison roles in the way you've just identified?

23   Is your answer to that yes at this moment, Mr. Katz?

24       MR. KATZ:  My answer to that is unequivocally yes.

09:39:56  25       THE COURT:  Mr. Goldenberg, I can see you.  May I

1    consider that when I consider all that I will once this

2    hearing closes?

3             MR. GOLDENBERG:  Yes, Your Honor.  I just want to

4    clarify that I reached out to Ms. Conroy on Wednesday and

09:40:13   5    presented an alternative that combined the two slates that

6    are before the court, Team Ohio and then the team that Seth

7    and Jayne are leading, and proposed a more streamlined

8    leadership.

9             But yet we understand, as Team Ohio, many of our

09:40:35   10   firms have worked with almost all of the firms that are in

11   what I call the consensus group, which is about over 30

12   firms at this point.  We have worked with most of those

13   firms collectively.  We would anticipate, if we were to be

14   appointed as Team Ohio to lead, that we would continue to

09:40:54   15   work with those firms as this litigation goes forward, we

16   would try to be inclusive in that respect, and certainly

17   keep everyone informed of the litigation as it develops.

18            Ms. Conroy responded back -- well, to be more

19   specific, our proposal was two co-leads, one from each

09:41:13   20   group, five EC members from each group, so ten total, to be

21   selected by each group.  And then one Community Liaison from

22   each group, so two total.

23            And then Ms. Conroy responded back with their

24   proposal.  And at that point, there was no further

09:41:34   25   communication.  I think that was as of yesterday, because we

had this hearing coming up.  But we do understand the

court's desire for inclusiveness.  We just feel as to

leadership, it should be a little more concentrated, as I

just explained.  That's what we propose.

09:41:57  THE COURT:  All right.

MR. GOLDENBERG:  Yes.

THE COURT:  And so -- I thought it was yes.  I

will tell you, my notes indicate a qualified yes.  So let me

just ask quickly.  I don't want to interfere with Mr. Katz's

09:42:13  presentation too much.

Mr. Parry, is there any reason I should not

consider that because you would not be interested in joining

the Steering Committee proposed by the Feezle Leadership?

MR. PARRY:  Well, Your Honor, we would certainly

09:42:28  be interested in occupying any position that the court would

order.  Frankly, I've worked with many of the other lawyers

in the other group.  I think I've worked with Mr. Katz very

successfully in the first year he was a lawyer.  So we would

be happy to work with them in any position.

09:42:49  Our view of the leadership in this case from day

one has been that there needs to be some negotiation with

respect to the co-lead positions in the case.  Their

position on this has been unyielding since day one.  They

have four co-lead attorneys, and they're not interested in

09:43:11  listening to any other proposition.

1          So our view is that's something that should be

2     negotiated, but obviously Your Honor has to make the final

3     call on that and we will occupy happily any position Your

4     Honor would choose.  Thank you.

09:43:29  5          THE COURT:  Thank you, Mr. Parry.  Is the Nils

6     Johnson referenced by Mr. Katz with us and able to tell me

7     if that's something I can consider going forward, or if he

8     would prefer that I did not?

9          MR. KATZ:  I think he is trying to get his camera

09:43:49  10    turned on, Your Honor.

11          THE COURT:  Thank you.

12          And I am happy to hear your voice even if I

13     can't -- there you are.  At least -- okay.

14          MR. NILS PAUL JOHNSON:  Good morning, Judge.

09:43:58  15          THE COURT:  Now I know which of the two it is.  It

16     is the elder.  I think you and your son have different

17     middle names.

18          MR. NILS PAUL JOHNSON:  Yes.

19          THE COURT:  Technically he's not a junior, right?

09:44:07  20          MR. NILS PAUL JOHNSON:  Yes, Your Honor, that's

21     true.

22          THE COURT:  All right.  So, sir, I know you were

23     hearing even before I could see you.  I just want to know

24     that as I contemplate what I am being told and what I've

09:44:19  25    read, may I consider you as a Community Liaison member to

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

1    the Feezle Leadership as has been suggested by Mr. Katz?

2         MR. NILS PAUL JOHNSON:  Yes, Your Honor.  And I

3    have a long time and good working relationship with Attorney

4    Amato as well, which was already mentioned.

09:44:38  5         THE COURT:  Thank you.  Thank you all for that.

6         Mr. Katz, thank you for allowing me to clarify.

7    Back to you.

8         MR. KATZ:  Of course.  Thank you, Your Honor.

9         I think where I left off was this is a big case.

09:44:52  10   There is a lot of work.  There will be a lot of work to get

11   done before we reach the finish line in this case, however

12   long that takes.

13        And the proposed four co-leads in this litigation,

14   myself, Ms. Graham, Ms. Conroy and Mr. Morgan, as Your Honor

09:45:09  15   is aware, we've been working cooperatively basically since

16   the days following the derailment, coordinating our experts

17   to go out and collect samples amongst ourselves.

18        We've been coordinating very well.  We've worked

19   together very well, not only in this case, but our four

09:45:27  20   firms have a very long history of working together in other

21   cases to have successful conclusions of those cases.

22        The four firms have the resources to lead this

23   litigation.  And the four individuals have good

24   relationships with all the lawyers that we've had involved

09:45:46  25   in the Feezle Leadership Group.

1          We've also been working very cooperatively with

2     proposed members of the Executive Committee on obtaining

3     other experts in multiple disciplines.  As Your Honor asked

4     us to coordinate experts in soil collection after the

09:46:07  5     CeramFab TRO hearing, we've done that.

6          So we've been inclusive.  We've been operating as

7     a well-oiled machine as our four co-leads.  And that's the

8     reason we think that the number four is the right number, no

9     more, no less, and why we think we are the right four

09:46:24  10     individuals to steer this ship for you.

11          What we've done in creating the other committees,

12     including the Working Committee, is assess what we think the

13     needs of the case are.  And part of our job will be to make

14     sure there's no duplication of work, there's no waste of

09:46:43  15     work, but also to make sure that all of the work is done at

16     the highest level.  To make sure that these communities that

17     have been impacted get justice, and get justice as quickly

18     as they can given the confines of our legal system.

19          There are many, many different interests at play

09:47:02  20     here.  There are a lot of different types of putative class

21     members.  There are many Ohio communities that are impacted.

22     And our group has 18 different Ohio law firms in it,

23     including my Cincinnati office, which we've had for 16

24     years.

09:47:25  25          One example that I'd like to point out to the

1    court is our proposed Executive Committee member, Michelle

2    Kranz, as proposed liaison as well.  She is a member of the

3    Ohio cattle farmers community, and her family has

4    participated in the 4-H and the FFA program showing cattle

09:47:46  5    for years.  We receive many calls that farmers in northeast

6    Ohio, their livestock are dying after being exposed to the

7    groundwater or just the initial plume.  And Ms. Kranz has

8    been instrumental in helping us get experts to help us

9    assess those issues quickly.  She is also the

09:48:10  10    President-Elect of the Ohio State Bar and will take her role

11    in July.

12        We've also got Pennsylvania communities that have

13    been impacted, and we have firms on our Steering Committee

14    from -- and Executive Committee from Pennsylvania.  Some of

09:48:23  15    those firms and some of those cases had intended to be filed

16    in the Western District.

17        We communicated with them.  We explained to them

18    our vision of the case.  We explained to them what we've

19    done to that point in time.  And after those conversations,

09:48:38  20    they were very interested and did file their cases in the

21    Northern District of Ohio, and some of them were filed

22    directly and assigned to you, some of them were later

23    transferred to you.

24        Now, there is a single case filed in the Western

09:48:54  25    District, and I know Mr. Clements wants to address that at

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1    the end.  We spoke with that attorney as well.  And they

2    represent a school district just across the border.  And

3    they filed in the Western District of Pennsylvania.  We'll

4    come back to that when Mr. Clements addresses the court.

09:49:11  5    And then we've got various national law firms with

6    the resources and experience to guide this case and work on

7    this case.

8    This is a case that has the national eye.  I mean,

9    I can't think of the last time we've heard so many news

09:49:29 10    reports of train derailments across the country, other than

11    the fact that this train derailed in East Palestine and has

12    really put the national eye and the national spotlight on

13    derailment cases.

14    So this case, while it does directly impact these

09:49:47 15    local communities, it is in the national spotlight, and

16    hopefully will effect change and make our railways safer

17    nationwide, make all the communities safer where rails go

18    through them.

19    We've got a team that's built to address many

09:50:03 20    legal issues; preemption; CERCLA; railroad regulations;

21    lawyers who are experienced in handling derailment cases,

22    trying derailment cases; environmental cases; class actions;

23    mass actions; issues surrounding livestock; impacts on

24    businesses that are within the area that they can't get

09:50:24 25    their customers there, they are closed for one reason or

1    another; impacts on individual, whether it's acute health or

2    long-term health; economic losses that the individuals have

3    suffered; property damage and property value drop that the

4    individuals have suffered; lawyers that are involved in the

09:50:43    5    political interests; lawyers who have represented

6    governmental entities and municipalities are involved in the

7    Feezle Leadership Group; appellate lawyers; and lawyers who

8    have in their skill set creating and overseeing complex

9    settlements that last years and potentially decades.

09:51:07    10           So our team that we've put together is put

11    together designed to handle and have lawyers with vast

12    experience that will cover every aspect of this case, cover

13    all putative class members, and be the arm of the court that

14    can get this case done.

09:51:28    15           We have taken these various skills to build a law

16    firm of law firms, as I said.  And we have built a team that

17    is assembled to get work done efficiently, effectively, and

18    at the highest levels to bring justice for the communities.

19           We will be able to multitrack depositions.  We

09:51:47    20    will be able to write multiple briefs at one time.  Because

21    we don't have just one lawyer who can handle derailments, we

22    have several that can take the deposition and be ready when

23    the witnesses are ready.  Scheduling will not become a

24    problem for our team.

09:52:01    25           And it will all be done under the direction of the

1     four proposed co-leads to ensure no waste, and avoid

2     unnecessary duplication.

3          Our team has also very effectively been able to

4     coordinate with Norfolk Southern's counsel.  Now, we haven't

09:52:17  5     always seen eye to eye, and when we haven't, we've been able

6     to come to the court.  But we've been able to effectively

7     communicate and reach compromises where they are

8     appropriate.  And that will continue.

9          Norfolk Southern is a multibillion dollar company,

09:52:34  10     and so far, as is their right, they have shown no indication

11     of anything other than vigorously defending all of these

12     cases.  Our leadership team is prepared for a long

13     litigation should that happen, and we've got a history with

14     firms that have shown their ability and willingness to see

09:52:54  15     all cases to the end.

16          One other thing that's important in how we decided

17     to build our Feezle Leadership team and why we were so

18     inclusive.  We have talked with the members of the

19     community, and we have learned, they don't trust Norfolk

09:53:13  20     Southern, and they don't necessarily trust the information

21     they're getting from the EPA or other agencies.  We've heard

22     it from clients repeatedly.

23          And those lawyers -- or those clients, those

24     community members that have hired individual lawyers have

09:53:29  25     developed a relationship of trust with those lawyers.  One

1    of the reasons we've been so inclusive, in addition to the

2    amount of work, was to make sure that those members of the

3    community can go to someone that they've developed a

4    relationship with, trust with, get information, know that

09:53:47  5    that lawyer is part of the group leading this organization.

6         It may not be the co-leads, it may not be the

7    Executive Committee, but they are involved.  They will be

8    knowledgeable.  They will be involved in the aspects where

9    their skill set fits.  But they will know about everything.

09:54:06  10   So those community members can go to people they trust to

11   get information.  That's why we think inclusivity is so

12   important.

13        And the final point I'd like to make, Your Honor,

14   is that I think our group, we are just of a different

09:54:22  15   philosophy, and it is one of inclusion.  We'll have the

16   leadership at the top and everybody else involved.

17        As I mentioned earlier in response to Your Honor's

18   question, we did make a proposal to add Mr. Goldenberg,

19   Mr. Parry and Mr. Nils Johnson.  That was rejected.

09:54:45  20        As I said, we are still very open to having them

21   appointed to be part of our group.  While we understood it

22   would add three more lawyers, but we would be adding three

23   lawyers who are very, very good at what they do.

24        As Mr. Parry indicated, he and I worked together,

09:55:03  25   it wasn't my first year out of law school, but it was my

1    first year as a plaintiffs' lawyer.  I was on a trial team

2    that he tried a class action in St. Clair County, Illinois,

3    and I learned a lot from Mr. Parry and I have a lot of

4    respect for him.  My partner, Melanie Bailey, who you've met

09:55:19    5    on the prior hearings, used to work for Mr. Parry.

6    Mr. Parry is a great class action lawyer.  No ifs, ands or

7    buts about it.

8         Mr. Goldenberg has a tremendous amount of

9    experience handling environmental cases.  He also has known

09:55:33    10    the people at my Cincinnati office for many years.

11         And Mr. Nils Johnson is clearly a pillar of the

12    community there.  He knows Mr. Amato well and is spoken very

13    highly of.

14         We are more than happy to add those three lawyers

09:55:47    15    to our leadership group, as well as any of the other lawyers

16    that want to do work to the Working Committees.

17         I am going to ask Ms. Graham if I've left anything

18    out of our presentation or if she's got anything to add.

19         MS. GRAHAM:  Thank you, Attorney Katz.  No.  I

09:56:03    20    think you've addressed everything.  Unless the judge has any

21    specific questions for me, I am just going to put myself

22    back on mute.

23         MR. KATZ:  And then if Your Honor doesn't have

24    questions for Ms. Graham, I would like permission for

09:56:15    25    Mr. Seeger to briefly address the court.

1          THE COURT:  I don't have questions for either you

2     or Ms. Graham at this time.  Thank you for all that you've

3     said.  I might have one question after I hear from

4     Mr. Seeger, but I'll wait, hearing from you first,

09:56:32  5     Mr. Seeger.  You have my attention.

6          MR. SEEGER:  Good morning, Your Honor.  It is an

7     honor to be before you, and to even be considered to be

8     involved in a case like this, because it's so important.

9          Mr. Katz did a really good job I think hitting on

09:56:47  10    all the points, so I'm not going to duplicate anything he

11    said, maybe other than to add that when Mr. Katz worked with

12    Mr. Parry, he worked for me.  Mr. Katz used to be my

13    partner.  We're no longer partners.  But I know him very

14    well.  I know his abilities.

09:57:02  15          And I'd like to highlight one thing about Seth and

16    Jayne and Beth and Mike Morgan, and that is that to lead a

17    case, and I've led a number of them, Your Honor, I know

18    we've never met, but if you look at my resume, I was a lead

19    in the NFL -- I am currently a lead in the NFL concussion

09:57:21  20    settlement, I led Vioxx, I'm involved with 3M.  And I

21    typically seek leadership or co-lead appointments, and I am

22    not in this case because I am very comfortable with the work

23    that they have done and the way they have led this case by

24    trying to build consensus.

09:57:36  25          I also know them to be lawyers who work well with

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

1   others.  And I think that's going to be really important in

2   a complex case like this, where you're representing diverse

3   interests, and in such an important decision for a judge,

4   and I don't mean to be presumptuous in anticipating your

09:57:53   5   important decisions, but picking a committee to lead a case

6   is a pretty important decision.  It's like building a

7   virtual law firm.

8       And the four leads who are applying here have

9   really done a lot of work, and have worked very hard.  They

09:58:08   10   reached out to me as soon as we got our case on file and

11   were very open.

12       So I wanted to just point that out, because I

13   think it's really important.

14       And the amount of work they've done and in the

09:58:21   15   skill sets that I've observed, Ms. Conroy, for example, and

16   I worked together in the opioid litigation in front of Judge

17   Polster.  She's not only known nationally as a great trial

18   lawyer, but she was involved in all the settlement

19   discussions.

09:58:34   20       So the leads in this case have demonstrated, in my

21   opinion, an ability to be tough when they need to be and

22   aggressive, but also to manage cases efficiently and to be

23   reasonable when it's appropriate to be reasonable.  And I

24   wanted to point that out.

09:58:48   25       Now, having said that, I'll make a final comment.

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1    I too have worked with almost every lawyer I think on the

2    Zoom I'm looking at.  And Your Honor has a wealth of riches.

3    You really have a great, highly skilled group of lawyers,

4    and it's a tough decision.

09:59:02    5    I like the approach that the leads from the Feezle

6    Group have taken, which is to be inclusive and try to

7    incorporate everybody and try to put them where they need to

8    be.  We can't all lead; we can't all be on PECs; and we

9    can't all be on the PSC.

09:59:20    10    Sometimes we have to create subcommittees to bring

11    new young lawyers who may not have the resources to fund the

12    litigation like this, but need the opportunities in big

13    cases.  And we create, under the auspices of the leadership

14    and these sites, those opportunities by creating

09:59:37    15    subcommittees that they can work on and get that experience.

16    So, Your Honor, I am here if you have any

17    questions for me, but I just wanted to point that out.  And

18    I thank you for giving me the time to do that.

19    THE COURT:  Thank you, Mr. Seeger, for what you've

09:59:48    20    added.

21    Mr. Katz, there's only one topic, and it's usually

22    the more difficult to discuss.  And I don't expect details

23    or finality.  And I don't mind sharing with all of you, I

24    don't anticipate making part of my order anything other than

10:00:07    25    my expectation that all fees and non-taxable costs will be

1    reasonable.  I'd like to hear an assurance that if chosen,

2    the Feezle Leadership will keep that in mind from this

3    moment forward.

4          MR. KATZ:  Absolutely, Your Honor.  And that will

10:00:26  5    be one of the tasks that the four co-leads will oversee, to

6    make sure that the work done is reasonable, to make sure

7    there is no waste, make sure there is no waste on costs, and

8    to make sure that there is no unnecessary duplication.

9    Because all of those things go into the taxable fees and

10:00:45  10   costs.

11         You know, but we do need to hire experts.  And I

12   know the court is familiar with some of the experts we've

13   already hired and the work that they've done.  But it's

14   going to be incumbent upon us, and we promise that we will

10:00:59  15   make sure that the work that the experts do is reasonable as

16   well.

17         THE COURT:  And I appreciate that assurance.  And

18   I have confidence in it.  And I'll just add another reason.

19   It's not just to manage the fees and costs of the

10:01:15  20   litigation, but also, at some point, if plaintiffs,

21   collectively, are successful in this litigation to any

22   degree, there would be some distribution of whatever benefit

23   might result.

24         And I want to make sure, on behalf of the true

10:01:32  25   litigants, the residents of East Palestine, whether it's an

1  individual or a business owner, that they're treated fairly,

2  that there is a proportional distribution that isn't overly

3  subsumed by the hard-working fees and costs of the

4  attorneys.

10:01:52  5         Make sense?

6         MR. KATZ:  Absolutely, Your Honor.  And you have

7  our assurance that we will keep that in mind throughout the

8  litigation, beginning -- we've already done that, but

9  continuing from today forward.

10:02:05  10         THE COURT:  Great.

11         With that, if the Feezle Leadership is satisfied,

12  I am as well regarding your presentation.  No other

13  questions for you at this time.

14         I'll invite the Team Ohio/Fisher Leadership to

10:02:20  15  address me.  And keep in mind the questions that I asked.  I

16  might not have the would you add to or consider enlarging

17  your proposed team that I had for Mr. Katz, but I will

18  certainly be interested in knowing about the reasonableness

19  of fees and costs among the many other factors Rule 23(g)

10:02:43  20  lays out.

21         Am I right in thinking, Mr. Berman, you will

22  start, and then include Mr. Goldenberg at some point?

23         MR. BERMAN:  Yes, Your Honor.  I'm going to be

24  actually very brief, because I do want to let my Ohio

10:02:55  25  members talk today, because I believe strongly, I think you

1    can tell from our papers.  So if Mr. Johnson could be

2    permitted, there he is, at some point.  So I am going to

3    talk just very briefly, and then Mr. Goldenberg and

4    Mr. Johnson.

10:03:14    5         Now, Your Honor, of course I read about this case

6    in the papers and it was in Ohio and I'm based out of

7    Seattle, and I'm thinking, you know, wow, that's a tragedy I

8    would not be involved in this litigation.

9         And then I got a call from Mr. Johnson, whose

10:03:29   10    daughter works at my firm.  She's a partner, a very capable

11    complex litigation partner, Kristen Johnson, who is on the

12    phone, and he talked to me about what was happening in the

13    community.

14         And he said, you know, "We need a national law

10:03:43   15    firm, but I live in this community.  I have neighbors who

16    have been harmed.  Every day of my life I'm living with

17    this.  I need a law firm that I can trust at the end of the

18    day, that the people in my community can look at me and

19    said, 'You did a good job.'  And so I am imploring you,

10:04:02   20    Steve, to get involved."

21         And that's how I got involved, and that's how I've

22    been approaching it from the get-go, to be listening to what

23    I call Team Ohio, and bringing my national experience to

24    help the residents recover.

10:04:17   25         Your Honor, just by -- you know, I am in Seattle,

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1    but in two of the largest issues that the State of Ohio has

2    faced, tobacco and opioids, they hired me.  I think that

3    says a lot about my leadership.

4    One of the reasons I didn't go along with the

10:04:34    5    other group's proposal, in addition to the fact that they

6    absolutely won't consider me in any position, they have not

7    offered me a position, is it's too big.

8    You asked about fees and costs.  The way I look at

9    their proposal, they have 37 different firms on that

10:04:55    10    proposal.  And the only way -- I'm just going to be candid

11    about it.  The only way that you get that many firms is if

12    you promised everyone work.  That's why they vote for you.

13    And 38 firms, looking at all the pleadings, doing all the

14    work, is going to drive up the fees and costs.

10:05:12    15    And so our team -- and there are many fine lawyers

16    on the other proposal.  Mr. Seeger and I have been co-lead

17    counsel in many cases.  I have worked with Ms. Conroy, and

18    we've worked together.  But they're bloated.  They're too

19    big.  And the residents of the community, at the end of the

10:05:29    20    day, they want a team that's not going to rack up too much

21    money in fees and expenses.

22    So we approached it in a much leaner way, and we

23    also approach it in a way that we tried to match up, as

24    Mr. Goldenberg is going to explain, what's needed in a case.

10:05:49    25    So we have Mr. Fayard, who has tried more railroad

1    accident cases maybe than any lawyer in the country.

2            We have Mr. Goldenberg, who is a specialist in

3    environmental law.

4            We've matched up the needs to the local firms.

10:06:08  5            It was our idea to have a liaison, not theirs.

6    And now they have one.  But the minute I looked at this

7    problem, I said, "We need people on the ground who are going

8    to be tasked with interacting with the community," and

9    that's why we suggested that position and the Johnson voice

10:06:29  10   to take on that role.

11           So having said that, unless you have specific

12   questions of me, Your Honor, I am going to let

13   Mr. Goldenberg and Mr. Johnson take over.

14           THE COURT:  I think I do, and I'm not precisely

10:06:43  15   sure of my articulation, but maybe you'll be able to answer.

16   And I appreciate your candor, in that using the Feezle

17   Leadership proposal is too big.  And I know from the

18   proposal submitted by your team, that indeed it is organized

19   differently.

10:07:04  20           And I'll be equally candid.  Without understanding

21   differently, I worry that your organization might have

22   inherent redundancies that although a big team, the Feezle

23   Leadership doesn't necessarily reveal in its writing.

24           I worry, for example, Mr. Berman, that the

10:07:28  25   derailment NTSB group might have its own discovery and

50

1   expert component, and the environmental might have its own

2   discovery and expert component, and down the line, medical

3   monitoring, damages.  I am just, without you or

4   Mr. Goldenberg or Johnson helping me, wondering, where are

10:07:56   5   the economies of scale?  Will there be any consolidation of

6   discovery efforts regardless of which discipline the

7   discovery is of?

8       Am I articulating that in a way that allows you to

9   help me, Mr. Berman?

10:08:16   10       MR. BERMAN:  Yes, Your Honor.  I would be glad to

11   try to answer your question.

12       THE COURT:  Thank you.

13       MR. BERMAN:  So I actually think that our proposal

14   is more streamlined.  Rather than having all these

10:08:24   15   committees with undefined roles, which is what the other

16   side has, we decided to say, "Okay, I am lead counsel, and I

17   am going to be involved in overseeing everything."

18       And then, to be efficient, to be more efficient,

19   we're going to say to Mr. Fayard, for example, "You focus on

10:08:44   20   the railroad stuff.  So if there's a deposition coming up,

21   that's your thing.  We'll coordinate among all the team

22   members, but you really are in charge of the railroad

23   depositions and track."

24       "Mr. Goldenberg, you are in charge of looking at

10:09:01   25   the water and air issues."  Right?  "We're all going to work

51

1     on it together, but you kind of take the lead on that."

2          And Mr. Coates would take the lead on medical

3     monitors.

4          We would all be coordinating.  And actually, I

10:09:15  5     think it's way more efficient than having this huge

6     structure that they have, with just many more damages --

7     excuse me, many more people weighing in on various subjects.

8          Again, what I tried to do in structuring this was

9     to take the expertise of these lawyers, like Mr. Goldenberg,

10:09:36  10     and say, "Okay, you focus on the environmental stuff."  So I

11     actually think we're being more efficient, if that answers

12     Your Honor's question.

13          THE COURT:  It certainly helps me.  And I'll keep

14     that in mind as I hear from the other members of your team.

10:09:49  15     And as you have grown accustomed to, I will ask if I'm still

16     puzzling over some point.

17          Thank you, Mr. Berman.  Anything more before I go

18     to either Mr. Goldenberg or Mr. Johnson?

19          MR. BERMAN:  Not unless you have any questions,

10:10:03  20     Your Honor.  Thank you for hearing me.

21          THE COURT:  Thank you for your interest.

22          The one of you, I won't dictate the order, is it

23     you, Mr. Goldenberg, next?

24          MR. GOLDENBERG:  I believe so, Your Honor.

10:10:16  25          Thank you for this opportunity to present before

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

1    the court.  I do want to say, you know, Team Ohio is

2    comprised of eight firms, five of which are Ohio-based, two

3    of which are local to the region affected by the derailment.

4    And we think Team Ohio represents a good -- the best core

10:10:39    5    from which to create a leadership structure.

6            To the point the court raised about potentially

7    adding to one group or the other, we also recognize that in

8    our submission to the court, in a footnote, I don't exactly

9    have the number in front of me, but we understand the court

10:11:02    10   certainly has the authority under Rule 23 to pick and choose

11   from both of the leadership slates that have been put before

12   you.  We would welcome any additions that the court thinks

13   would enhance Team Ohio.  So I just want to add that point

14   likewise.

10:11:23    15           So to the extent the court is considering adding

16   attorneys to the Feezle Group, which I referred to as the

17   consensus group earlier, likewise, the court could do the

18   same with our group.  And we would happily work with that

19   structure, because as you noted early on, under Rule 23,

10:11:44    20   it's the court's responsibility, and it is the court that

21   will make the ultimate decision.  And, you know, the

22   community is the one that will benefit from that, the

23   knowledge of the court in that regard.

24           I am going to go through briefly each of the firms

10:12:01    25   that we have in Team Ohio and discuss what we think are the

1    highlights for those firms, and then I am going to bring up

2    a couple other points that we did address briefly in our

3    submission, but not in detail, particularly our experience

4    with the Ohio Attorney General, which is going to be

10:12:24  5    important here because of the actions that the Ohio Attorney

6    General has filed here that I believe are before this court.

7        I would also note that I think yesterday, the

8    federal government, through the U.S. EPA, brought a cost

9    recovery and several penalties actions as well as certain

10:12:42  10   injunctive relief that I think is going to ultimately end up

11   in front of you as well.

12       The other thing I want to bring to the court's

13   attention and maybe shed a little more light and progress

14   that we've made is our desire to bring in and create

10:12:58  15   opportunities for certain regional law schools and other

16   colleges.  We think this litigation may present a unique

17   opportunity, of course, with the court's approval, to

18   implement a program like that.

19       Team Ohio we think is the right choice, Your

10:13:19  20   Honor.  Because the Johnson & Johnson firm and Elizabeth

21   Bernard, both of which are local to the region, collectively

22   have been representing the citizens and the community and

23   the businesses of East Palestine and surrounding areas for

24   over 135 years, they and Team Ohio can facilitate and foster

10:13:42  25   the trust with those families and businesses that have been

1    most affected by the February 3rd derailment.  After all,

2    these are the firms that are going to have to live with the

3    results for decades to come.  These are the firms that are

4    going to deal with the people directly, because these are

10:13:59   5    the firms that know the people, the families, their friends,

6    their businesses that they go to.

7            Because Hagens Berman is one of the largest, most

8    successful, well financed class action law firms in the

9    country, and because Hagens Berman's partner, Kristen

10:14:19  10    Johnson, who I will note was on this call earlier but had

11    another litigation demand at 10:00, and so she had to leave,

12    they -- she is from this -- as the court knows, she is from

13    this community, she was born and raised in this community,

14    and is a very accomplished complex and class action

10:14:38  15    litigator.  She will be very involved in this case.

16            Kristen Johnson is a litigator.  She tries cases.

17    She won a $142 million RICO verdict against a very large

18    drug company.  And drug companies fight, as we know, very

19    hard.

10:14:57  20            So Team Ohio, with Hagens Berman as one of our

21    leads, can stand toe to toe with Norfolk Southern.  They are

22    uniquely motivated because of who the attorneys are that are

23    involved to tirelessly fight for the rights of their

24    neighbors, their friends and the community as a whole.

10:15:19  25            I would also note, Your Honor, that Hagens Berman,

MARY L. UPHOLD, RDR, CRR       (330) 884-7424

1    while they're in Seattle, secured the largest verdict in

2    Columbiana County history at the time that verdict was

3    obtained.  And that's, of course, one of the counties that's

4    been mostly affected by the derailment.  So Hagens Berman

10:15:41    5    has a presence and they have been successful in this region.

6         Because Fayard & Honeycutt and the Bryant Law

7    Center are the most experienced firms in the country when it

8    comes to litigating railroad derailment cases, Your Honor,

9    collectively litigating 14 separate derailments, including,

10:16:04   10    and this is very important, I believe, two that involve

11    vinyl chloride, going back as far as 1982, they and Team

12    Ohio know what it takes to efficiently and successfully

13    litigate this case and reach a fair, reasonable, and

14    hopefully expedited resolution of this litigation.

10:16:28   15         And because Strauss & Troy has maintained a

16    consistent presence in this community through Ron Parry

17    following the derailment and has met with hundreds of local

18    residents, they and Team Ohio now represent over 500

19    clients, including residents and businesses, we understand

10:16:46   20    the disruption caused and the long-term economic and health

21    consequences and concerns this community and the surrounding

22    communities, including those in Pennsylvania, will have now,

23    a year from now, and 20 years from now.

24         Because Goldenberg Schneider has extensive

10:17:08   25    environmental health and safety expertise, they and Team

1    Ohio understand the critical environmental health and safety

2    issues created by this disaster, and have already retained

3    and dispatched experts that are qualified in soil, water,

4    ash and air sampling, railroad engineering, railroad

10:17:28  5    operations, bearing failure, which appears to be the cause

6    of the -- one of the causes of the derailment, and tank car

7    failure.

8         And because Markovits, Stock & DeMarco has decades

9    of experience creating, implementing and overseeing medical

10:17:47  10   monitoring programs, some of which are in Ohio, like

11   Fernald, they and Team Ohio are qualified to seek, implement

12   an effective, meaningful and community accepted, which is

13   very important, medical monitoring program here.  And this

14   would include the use of independent, court-appointed

10:18:10  15   environmental and medical experts.

16        And then, as I mentioned, I wanted to point out

17   Team Ohio's Attorney General experience.  Mr. Berman noted

18   Ohio opioid litigation against certain drug manufacturers

19   which is currently ongoing on behalf of the State of Ohio.

10:18:32  20        Markovits, Stock & DeMarco currently have

21   litigation involving DuPont and others related to PFOA,

22   contamination from the Washington Works facility on the Ohio

23   River near Marietta.

24        Markovits, Stock & DeMarco recently represented

10:18:48  25   the State of Ohio against Monsanto for historical PCB

1       contamination.  That case successfully resolved last year

2       with an $80 million settlement.

3               And then, of course, there's the tobacco Medicaid

4       reimbursement litigation from the late 1990s, early 2000,

10:19:11   5    which successfully resolved with a $9.86 billion settlement

6       in favor of the State of Ohio, which involved my firm, and

7       was led by Hagens Berman.

8               I do want to note one thing, because it has -- I

9       don't believe it's come up yet, and I think whoever the

10:19:29  10    leadership team is, whether it's a combination of the two or

11      one or the other, Team Ohio is committed to early resolution

12      efforts here.  This is important.  Whether it's successful

13      or not, it is important.  It is important to the community.

14      It is important that we can come up and stand in front of

10:19:50  15    our constituents and say -- our class members -- "We went to

16      Norfolk Southern because we know you need help now."

17              If appointed to lead this litigation, Team Ohio

18      will approach Norfolk Southern to explore an early global

19      resolution that will provide immediate, short-term and

10:20:13  20    long-term relief, and adequate remedies for the community as

21      a whole.

22              Team Ohio understands that the community would

23      prefer a timely, meaningful and effective settlement, and

24      would expect whoever its representatives are to represent

10:20:31  25    them, to seek a resolution sooner rather than later.  And we

1   are prepared to do that.  In fact, anyone should be prepared

2   to do that for these constituents.

3            Lastly, Your Honor, I want to touch on what we put

4   in our papers and give you an update on that, which is that

10:20:49   5   we think this might be a good opportunity to create learning

6   opportunities for regional law schools and other schools and

7   their students.

8            With the court's approval, we will work with

9   regional law schools to create these learning opportunities

10:21:07  10   for interested students.  This would include the University

11   of Akron.  And I believe Johnson & Johnson firm has already

12   contacted them, and there is interest on their end.  That's

13   because I believe they require externship hours for law

14   school, as well as pro bono hours for graduation.

10:21:24  15            Cleveland-Marshall, Johnson & Johnson has also

16   contacted that firm.

17            And lastly, Youngstown State University, which

18   does not have a law school, but the undergraduates do

19   participate in a moot court team, and they also have prelaw

10:21:39  20   students, of course.

21            And so that is something that is unique to Team

22   Ohio.  Obviously, whichever leadership structure gets

23   assigned to this case, whether it's a combination of the two

24   or not, this may be something the court may want to ask

10:21:57  25   Johnson & Johnson to take on to consider.

1          So in conclusion, Your Honor, the people of East

2     Palestine and the surrounding regions deserve a team of

3     lawyers committed to do all that is necessary to fight for

4     their futures, because this is a fight for the future of

10:22:10   5     these people, these families, these businesses and this

6     community and the surrounding communities.

7          Team Ohio is made up of lawyers that are the most

8     qualified, experienced and motivated, in our opinion, to

9     best represent the thousands of individuals, families and

10:22:30  10     businesses impacted by the derailment.

11          Most importantly, Team Ohio will stand by East

12     Palestine and the surrounding communities long after this

13     litigation ends.

14          So I would ask the court, I am happy to address

10:22:46  15     any questions about any of the firms, and I believe there

16     are representatives from each of these firms from Team Ohio

17     on the call, if the court has any other questions specific

18     to them; otherwise, I will turn it over to Mr. Nils Johnson.

19          THE COURT:  Thank you.  Just one clarifying

10:23:03  20     question, Mr. Goldenberg, regarding the participation of any

21     law school or college student.  I have written in my notes

22     appropriate roles, but I wondered, did you have some better

23     articulation how you would see any one of those students

24     being involved?

10:23:24  25          MR. GOLDENBERG:  I know Nils P. Johnson is on the

1    phone.  He's been handling most of this.  And I'll defer to

2    him for the answer to that question.

3         I would just note that I see a lot of different

4    opportunities, many of which could be related to coming into

10:23:40  5    the community to sit down and interview with some of the

6    affected residents and the businesses.  That would be one

7    avenue.

8         The other would be to participate as an observer,

9    of course with the court permission and certain court

10:23:56  10   processes, including potentially depositions, if that's

11   appropriate.

12        But otherwise, Nils P. has been taking the lead on

13   this, and I will turn it over to Nils.

14             MR. NILS PETER JOHNSON:  Thanks, Jeff.

10:24:13  15             THE COURT:  Thank you, Mr. Goldenberg.

16             Mr. Johnson, you have my attention.

17             MR. NILS PETER JOHNSON:  Thank you, Your Honor.

18        I have been in touch with the University of

19   Akron's law school program.  Jeff indicated they have a

10:24:25  20   30-hour pro bono requirement in order to graduate.

21        As a preliminary matter, I explained to them sort

22   of the consolidation process afoot that I personally had no

23   immediate authority to be promising much of anything to

24   these students, but on the understanding that that may

10:24:42  25   transpire someday, I started to learn from these programs

1    what their own internal criteria would permit them to do.

2    And those -- whatever responsibilities the student might

3    have would be circumscribed by those.  But in addition,

4    certainly to the goalposts of Local Rule 83.6 and whatever

10:25:04  5    Your Honor would be pleased to see them participate in.

6         I think Attorney Goldenberg had some good ideas.

7    Participating in hearings, going into the communities, being

8    able to do, you know, a little gumshoeing.  Right?

9    Interviewing community members, and serving that liaison

10:25:23  10    role, which I see as twofold.

11         One, it would require the attorney to obviously

12    proceed into the community to do what?  To explain to them

13    where the litigation stands, what's happening, what are all

14    these lawyers doing.  Right?  What's taking so long.  Right?

10:25:48  15         The second part of that responsibility would be

16    taking information from the community:  "What is happening

17    in the community?  Tell me about your family.  What's

18    happening with your neighbors?  Tell me, what are you

19    hearing?"

10:26:00  20         The flip side of that Community Liaison role would

21    be taking that information from the community, bringing it

22    back to the attorneys so that they might, you know, most

23    efficiently and accurately wage the war on the litigation.

24         So that role is critical in this situation where,

10:26:19  25    you know, Attorney Katz, at the outset, seemed to

1    acknowledge that there is a high level of distrust in East

2    Palestine right now.  There's a lot of unfamiliar faces in

3    town.  And the faith in authority figures I don't think is

4    very high.  I am not hearing that from our clients and so

5    many friends that I have.

6         And so to restore that, our team felt, by

7    explaining to the residents that there are two proposed

8    candidacies here, one of 38 law firms and one of 8 law

9    firms, they seemed more receptive to the smaller one, for

10   maybe obvious reasons.  You know, economy is a scale.

11   Right?  And, you know, allowing us to participate on a

12   lean-and-mean basis.

13        When this first came up, when the derailment

14   initially happened, our phones started to ring, Your Honor,

15   at our law offices.  You may know, we don't hold ourselves

16   out as participating in mass tort train derailment class

17   action litigation.  That is not a skill set of ours.

18        So as a matter of professional conduct, we

19   associated with firms that have the best skill set in those

20   subject matter areas.  And for that reason, I think it's

21   very appropriate for Hagens Berman to be involved here.

22   Steve Berman's reputation speaks for itself.  And I would

23   certainly be remiss if I didn't say I thoroughly enjoy

24   working with my older sister.

25        And those synergies, when explained to the

1  community, they really liked the sound of our proposal, Your

2  Honor.  And I know that we have an administrative task at

3  hand and an organizational task at hand, but I think the

4  communities' perspective on the size of the team, that they

10:28:10  5  will know, and they are going to be mindful of, you know,

6  that resolution.

7          And so I'd be remiss if I didn't share with you

8  some of the feedback I had received in the course of working

9  in the community.

10:28:22  10          THE COURT:  Well, I appreciate that, but I think

11  you and every other attorney on this call will understand

12  that it's on my shoulders the decision rests, not that of

13  the community.

14          MR. NILS PETER JOHNSON:  Yes, ma'am.

10:28:35  15          THE COURT:  In fact, it is often the task of the

16  judge to do what is best for the community even if it is at

17  odds with what the community might perceive as being best

18  for itself.

19          But I do appreciate all you have done and what you

10:28:48  20  have said.  Anything more, Mr. Johnson?

21          MR. NILS PETER JOHNSON:  No, ma'am.

22          THE COURT:  All right.  Have I heard fully then

23  the presentation amplifying your papers from the Team Ohio

24  or Fisher team?  Have I heard you well, Mr. Berman?

10:29:01  25          MR. BERMAN:  You've heard us well, Your Honor.

MARY L. UPHOLD, RDR, CRR      (330) 884-7424

1      Thank you.

2              THE COURT:  Thank you.  And thank you for, either

3      because you anticipated before the hearing or after my

4      questions to Feezle Leadership, giving me a fulsome,

10:29:13  5      complete presentation.

6              Mr. Jones, your team, I will refer to it as it is

7      in the papers, ECF 25, Cory Watson attorneys, is, to my

8      understanding, the only team that does not agree on the

9      consolidation in accordance with Rule 42.  I am interested

10:29:37  10     in hearing about that, as well as your proposal for leading

11     the entire putative class litigation.

12              You have my attention.

13              MR. JONES:  Sure.  Thank you, Your Honor.

14              And just to be clear, we do not have an opinion on

10:29:54  15     the class leadership structure.  And from all appearances,

16     both are highly qualified.  My firm has worked with most, if

17     not all, of these lawyers in various cases over the years.

18     And I think that the class cases will be well represented by

19     either slate.  And so that's not our position.

10:30:14  20              What we are saying is that there are going to be

21     cases in this litigation, including the CeramFab case that's

22     already on file, but definitely several dozen others that

23     are just not classable, in our view.  And so we don't

24     believe those class -- or those cases, rather, should be

10:30:31  25     made to fit within the purview of the class leadership

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1    structure.

2         THE COURT: Well, as you know, and I tried to make

3    it clear earlier, and hopefully I did, especially to

4    alleviate any concerns that either defense counsel might

10:30:48    5    have had, while we work together now about the prospect of

6    class counsel, interim class counsel, because there's been

7    no appointment or no certification of a class, it's

8    anticipated that that will be what happens.

9         And, of course, just as the defense might, in

10:31:10    10    scheduling matters that have been written about in the

11    status report, oppose class certification, you, on behalf of

12    CeramFab and the other clients you represent, will be able

13    to oppose class certification. I will certainly take up the

14    papers as I should. And if I need additional information,

10:31:33    15    may even schedule oral argument. But that's premature, not

16    the primary purpose why we're here.

17         So if there is no agreement to either, nothing

18    more to be said about that from the Cory Watson attorneys,

19    maybe it's best I turn my attention to allow the defense to

10:31:51    20    say what, if any. Again, my decision, but I don't want to

21    leave out defense counsel on this important decision I'll be

22    making about the appointment of interim class counsel.

23         Okay, Mr. Jones? Is there anything more at this

24    time?

10:32:06    25         MR. JONES: Well, just one more thing, if I may,

1    Your Honor.

2             So our concern is also just the case track and

3    these individual cases getting bogged down in procedures

4    that are just specific to class actions. You know, we all

10:32:21  5    know that class certification --

6             THE COURT: Well, why don't I interrupt you to

7    tell you that once I've heard from the defense about

8    appointment of interim class counsel, I will talk a bit

9    about scheduling, as has been written in the status report

10:32:41  10   docketed as ECF 26. So timing will be the primary

11   discussion there.

12            So let me ask you to hold that thought. Make a

13   note if you must so that you don't lose track of it. All

14   right?

10:32:57  15            MR. JONES: Thank you, Your Honor.

16            THE COURT: Certainly.

17            Defense counsel, as I indicated to Mr. Johnson

18   earlier, the decision is mine. It's one of the gifts the

19   trial court judgeship gives me, is an opportunity to make

10:33:14  20   tough calls daily. Yesterday I had to decide whether and

21   for how long to send a one-legged person who is likely to

22   lose his only leg very soon to prison and for how long. I

23   did. I didn't give him 20 years, but pretty close to it.

24   So I am equal to the task.

10:33:35  25            But I don't want to close this part of the hearing

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1    without allowing you, Mr. Johnston or Mr. Clements, to say

2    something if you thought you could inform the decision that

3    I will soon make.

4         May I call on you first, Mr. Johnston?

10:33:48  5         MR. JOHNSTON:  Yes.  I am going to defer to

6    Mr. Clements if it's okay, Your Honor.

7         THE COURT:  Absolutely fine.  Mr. Clements.

8         MR. CLEMENTS:  Yes, Your Honor.  Just briefly.

9         I would just say that since the onset of the

10:34:01  10   litigation, we have worked with various of the plaintiffs'

11   lawyers, many of whom are here today.  We've had a very good

12   working relationship with Mr. Katz and Ms. Graham since the

13   onset of the TRO in the Erdos case, and we've worked

14   together with them, and other lawyers that are here today

10:34:24  15   just with respect to scheduling, sampling work that's been

16   done at the track and inspection of the railcars.

17        You know, we are impressed by the presentations of

18   both of the proposed leadership structures and would be

19   pleased to work with whoever is chosen to represent the

10:34:45  20   class members.

21        THE COURT:  Thank you.  And I can certainly join

22   in those comments.  Impressed by those who have spoken today

23   and appreciate what's been imparted.

24        What I would like to do is taking up on the topic

10:34:59  25   introduced by Mr. Jones last and his concern about

1    scheduling.

2           When I issue the ruling regarding the appointment

3    of interim class counsel, leadership and those topics, I

4    will also, because I believe I have what's necessary, and

10:35:20  5    certainly will by the conclusion of this hearing, give you

6    guidance on the timing of the case and how it proceeds,

7    meaning the date by which I would like the amended or

8    consolidated class action complaint filed, the response date

9    to that.  And if the response is other than an answer, an

10:35:44  10   opportunity for an opposition and reply.

11          And you've given me some head start on those

12   topics in your status report.  There is a note in that

13   report at ECF Number 26, Mr. Jones, that indicates at

14   footnote 1, that's at page 3, page ID 524 of ECF 26, that

10:36:10  15   your client doesn't believe in the consolidation, doesn't

16   believe in its appropriateness, doesn't consent, and it is

17   written further in the motion about that.  So don't think

18   I've not considered that.

19          But the great likelihood is I am going to order

10:36:32  20   the matter consolidated.  I am going to order there be the

21   filing of an amended consolidated class action.  I will

22   choose the leadership, leaving some leeway for manipulation

23   within the four corners of my order.

24          So against that backdrop, counsel, I would like to

10:36:51  25   just hear you briefly.  And I say that because I appreciate

1    your time given already this morning to some of the

2    disagreement regarding the scheduling.

3         For instance, plaintiffs', at least I interpret

4    that to be Feezle and Team Ohio, representatives agree that

10:37:14  5    45 days after my order would be sufficient time for the

6    filing of the consolidated class action complaint.

7         What is apparently not in agreement is how long

8    the defense would have to respond.

9         So, Messrs. Clements and Johnston, you suggest

10:37:33  10    that you be given 60 days.  The plaintiffs seem to agree

11    that 30 would be sufficient.  I will remark that I add to

12    the time, whether it's plaintiffs' 30 or defendants' 60, the

13    time we've already had together.

14         As we know, the first-filed case was the 7th of

10:37:59  15    February, without consolidation, because of your

16    cooperativeness and waiving service, your answer or response

17    would be due by April 10th, I believe.

18         So when I consider 60, I am interested in knowing

19    why the additional time.  Do you anticipate a surprise,

10:38:23  20    something that you've not already been made aware of in one

21    of the individually filed cases?

22         The defense counsel who would like to speak to me,

23    will you do so now?

24         MR. CLEMENTS:  Your Honor, this is Scott Clements.

10:38:38  25    I mean, I think the issue with the 60 days is that, you

1  know, obviously we have not seen what the amended

2  consolidated complaint would consist of, and if there's

3  going to be more than one amended consolidated complaint.

4          And so, you know, we just would need some time to

10:38:56  5  be able to evaluate those complaints with respect to filing

6  any responsive pleading.  And, you know, that's why we

7  suggested the 60 days.

8          But I think certainly if the plaintiff is going to

9  be given 45 days, as they requested, we would at least want

10:39:12  10  45 days to be able to respond.

11          So I hope that answers Your Honor's question.

12          THE COURT:  It does.  It certainly gives me

13  something more to think about.  Thank you for that.

14          The status report also indicates a preference that

10:39:33  15  I stay responses in the individual cases to allow for an

16  omnibus comprehensive response.  I think that's wise.  But I

17  do want to intone at this juncture that at some point, I

18  would close administratively, terminate every case and

19  leaving only the operative amended consolidated class

10:40:02  20  action.

21          And, Mr. Jones, I will tell you at this moment, I

22  would include CeramFab's in that.  If you were eager to urge

23  me differently than you already have had an opportunity to

24  do so, I'd build in some opportunity for that.

10:40:20  25          But staying would only mean until the consolidated

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1    class action is filed, I wouldn't expect the defendants to

2    file responses to the 30 pending cases.  That's just fair.

3    But at some point after the filing of the consolidated class

4    action complaint, the other cases would cease to exist as

10:40:42  5    individual cases.  So make a note of that.

6         The next place where I would like you to weigh in,

7    however, is the disagreement on the length of time for

8    plaintiffs -- for, pardon me, defendants to reply.

9         Again, plaintiffs suggest a shorter period of

10:41:03  10    time, which, Mr. Jones, I will remark is in line with your

11    clients' desire to keep the pace of litigation going at a

12    reasonable clip.

13         Defendants, you asked for it 7 days later.  You

14    asked for 21 as opposed to 14 days.  Is there any explicit

10:41:26  15    reason for the additional 7 days?  I'll remark that 14 days

16    is more in line with what's typical even in a complex case.

17         But if you have some reason at this time for

18    thinking you might need 21 to reply, if there's a response

19    other than an answer, tell me now.  Mr. Clements?

10:41:47  20         MR. CLEMENTS:  Yes, Your Honor.  I mean, I don't

21    have anything specific to add, only that, you know, we're

22    sort of dealing with the unknown at this point without

23    having seen any amended consolidated complaints, and if

24    there's going to be multiple of those and what those consist

10:42:01  25    of.

1          THE COURT:  Fair response.

2          If you don't mind, let me engage you again,

3    Mr. Clements.  And this time anticipating, because, again,

4    sharing Mr. Jones' concern, this order, and I'll refer to it

10:42:17  5    perhaps as an omnibus order regarding class counsel, but

6    moving forward to scheduling of the response and any

7    opposition in reply, I would also set your Rule -- your case

8    management conference date, and in that require that you've

9    consulted among yourselves and produced a Rule 26(f) report.

10:42:40 10          Plaintiffs suggest that 14 days after the filing

11   of the consolidated complaint is enough time.

12          Defense, you suggest 30 days.  And if there is

13   some explicit reason, I'd like to be informed so that I give

14   it the attention you'd expect.

10:43:01 15          Mr. Clements.

16          MR. CLEMENTS:  Yes, Your Honor.  I mean, again, it

17   just goes back to this issue with, you know, what are the

18   amended consolidated complaints going to allege?  How many

19   are there going to be?  And those are going to form sort of

10:43:16 20   the scope of, you know, discovery and the Rule 26(f) meeting

21   for counsel.

22          And we just think we would need additional time,

23   more than 14 days in order to be able to review that, digest

24   what the claims are, and be able to discuss with counsel

10:43:29 25   what the discovery plan would be.

MARY L. UPHOLD, RDR, CRR       (330) 884-7424

1          THE COURT:  So let me ask -- I will start with

2    you, Mr. Clements, and then ask members of the leadership

3    team for Feezle and Fisher, or Team Ohio to respond.

4          You have indicated more than once that you don't

10:43:51  5    know if there will be more than one consolidated complaint.

6    Do you have some reason for that concern?

7          MR. CLEMENTS:  Well, I know I raised the issue I

8    think at one point a little while ago with Mr. Katz and

9    Ms. Graham, just about, like, is there going to be one

10:44:05  10   amended consolidated complaint, or are there going to be,

11   you know, multiple of them?  I think that may have been

12   raised somewhere in the papers at one point.

13         So at this time, we just don't know the answer to

14   that question.

10:44:20  15        THE COURT:  In fairness to us all, why don't you,

16   plaintiffs' counsel, Mr. Katz, Ms. Graham, do you anticipate

17   more than one consolidated class action complaint?

18         MS. GRAHAM:  Your Honor, Elizabeth Graham.  What I

19   can tell the court is that, first of all, we can get our

10:44:40  20   complaint on file within 30 days as opposed to 45, if that

21   would make the parody where the defendants would respond

22   within 30 days more equal.

23         I can also represent that having reviewed all the

24   complaints on file, what we intend to do is -- it's not

10:44:57  25   going to be anything new that Mr. Clements hasn't seen.  We

1    are going to blend the subclasses that are contained in the

2    various complaints, address the issues that are specific to

3    both Pennsylvania and Ohio, and that will be in one master

4    pleading.

10:45:11   5         There are some governmental entities, I believe a

6    school district that has a case in the Western District of

7    Pennsylvania that has not been before Your Honor.  So to the

8    extent that that might be a separate line of cases, we would

9    put that in a separate complaint.  But candidly, that's not

10:45:31   10   before Your Honor at the moment, so we haven't addressed it

11   with that counsel.

12        But notwithstanding, there will be nothing new or

13   surprising in our papers that Mr. Clements hasn't seen

14   already, just it will be in a consolidated format.

10:45:45   15        THE COURT:  Thank you for that.

16        And can I ask you to go further, if you can, to

17   respond to the concern of Mr. Jones.  I have heard two

18   general concerns.  One is the slowing down, bogging was a

19   term he used, but I also thought maybe his concern implied a

10:46:07   20   dissimilarity, an inability to reconcile CeramFab with the

21   other 29 cases.

22        Do you anticipate that problem as Feezle

23   Leadership?

24        MS. GRAHAM:  We do not, Your Honor.  We represent

10:46:25   25   several entities such as CeramFab, businesses that are in

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

 1    the area.  I believe that many of the other class cases also

 2    include businesses.  So we don't see anything that's

 3    dramatically different in the CeramFab case.

 4         Obviously, at some point, should the court certify

 5    a class, CeramFab will have the opportunity to object to a

 6    motion for certification.  CeramFab may have the opportunity

 7    to opt out of the class at various stages in the proceeding.

 8         But we don't see their existence as any impediment

 9    to filing a consolidated master complaint that includes a

10    subclass of businesses.

11         THE COURT:  Fair enough.

12         Mr. Berman or Mr. Goldenberg -- Mr. Berman, it

13    looks like you've unmuted.  Have you, sir?

14         MR. BERMAN:  Yes, Your Honor, I have unmuted.

15         THE COURT:  Okay.

16         MR. BERMAN:  It was our idea that we could get the

17    complaint up and filed in 30 days, not 45, which I think

18    Ms. Graham's group agreed to.  So we were hoping to get

19    ready in 30 days to file the complaint.

20         We too represent businesses.  We don't see any

21    problem in including their claims in the master class

22    complaint.  We think that should be done.  We have done that

23    in many similar cases like this.  For example, the Exxon

24    Valdez oil spill case, we had a business class.  So we don't

25    see any problem there either.

1          THE COURT:  All right.  Thank you for that.

2          And I think we're all aware, again, referring to

3    the factors under Rule 23(g), that class counsel would be

4    required to fairly and adequately represent all of the

10:48:04  5    parties on their side.  That would be CeramFab and every

6    other plaintiff, whether putative class or -- well, putative

7    class.

8          Thank you.  That's very helpful to me.

9          And I will, don't be shocked, I won't dictate to

10:48:22  10   you now, but I will write.  I will, again, hewing to what

11   allows you to be reasonable and efficient in your work, but

12   we'll trod in this case.  We'll keep it in the forefront, as

13   it deservedly should be.

14          There are just a couple of other matters, if you

10:48:44  15   don't mind.

16          Mr. Jones, the first goes to your client.  As you

17   know, I held a hearing.  I denied your client's motion for a

18   TRO.  But -- because it wasn't technically appropriate, and

19   I certainly had not calendared a hearing on the preliminary

10:49:05  20   injunction.  That motion still stands.

21          I thought after my ruling was made known on the

22   record, that, as based on the discussions had, especially

23   those regarding steps to be taken going forward to satisfy

24   the concerns of CeramFab that Mr. Conlin understood.

10:49:31  25          I ask you now, will you withdraw the motion for

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

1    preliminary injunction?

2         MR. JONES:  Yes, Your Honor, we will do that.  And

3    we have taken the steps that you had outlined in your order

4    as well.

10:49:42  5         THE COURT:  Thank you.  I had no lack of

6    confidence that you, your colleagues and the others

7    wouldn't.  Thank you for that.

8         I will note, if you don't mind, I can save you the

9    administrative step and note it as withdrawn, indicate that

10:49:55  10   in my minutes.  Okay with you?

11        MR. JONES:  That is okay with me.  Thank you, Your

12   Honor.

13        THE COURT:  And that doesn't offend any other

14   attorney, does it?  If so, say so.  If not offended, you

10:50:06  15   don't need to speak up.

16     (No reply.)

17        THE COURT:  The only other matter, and I call this

18   a housekeeping matter, regards, and this is for the Team

19   Ohio Leadership as proposed.

10:50:19  20        There is pending a motion for expedited relief

21   under Rule 23(d), as in "David."  You wrote about it in your

22   papers.  And I could certainly understand why you would have

23   been concerned about your clients waiving certain rights by

24   accepting assistance needed immediately.  I have read the

10:50:42  25   response, and also the reply.

1          I will remark that there is no affidavit causing

2     me to be concerned that some particular resident business or

3     individual resident of East Palestine harbors a worry of the

4     sort voiced in a rather early-filed motion.  I think you

10:51:01   5     know more now than you knew then.

6          What's your preference regarding this motion for

7     expedited relief, Mr. Berman or the one of you who would

8     like to speak?  I would like to remove it from being active

9     on my docket, thinking that it's premature is probably not

10:51:25  10     the best word.  It's a worry that is not reasonably held,

11     that accepting help at this moment is going to bar a

12     plaintiff who exists now or one who might later join by

13     opting in of any relief ordered by the court or offered in

14     the interim by an agency or even Defendant Norfolk Southern.

10:51:47  15          Mr. Goldenberg, it looks like you're ready to

16     engage me.

17          MR. GOLDENBERG:  Thank you, Your Honor.  That was

18     actually filed in the case originally filed with the

19     Markovits, Stock & DeMarco firm and Mr. Coates.  I think he

10:52:02  20     dropped off the call because of a technical concern that

21     happened and I don't see him listed as being on.

22          I would -- personally, I agree with the court,

23     with everything you just said.  I would like an opportunity

24     maybe to speak with Mr. Coates after this hearing, and then

10:52:22  25     I can follow up directly with the court or the court's

1    clerk, whatever the court prefers, and confirm that

2    Mr. Coates is on board with what I feel is the same as the

3    court, the court's decision, or preference as to how to

4    proceed on that.

10:52:42    5    THE COURT:  Thank you for volunteering to do that.

6    And I think that professional courtesy is what we should do.

7    So if you would take it upon yourself, Mr. Goldenberg, to

8    speak with Mr. Markovits or the representative best able to

9    speak for that firm.  And you're right, it was filed in the

10:53:04    10    case regarding Ibel, Tina Ibel and Sheryl Tomor, among

11    others.

12    And I think you and I are in agreement.  What you

13    can do is simply, again, striving to preserve energies, a

14    brief notice on the docket.  Because he's not here, I

10:53:26    15    wouldn't want you to make a notice to the court that he

16    would misunderstand or not agree with.  So just an

17    indication indicating that it's withdrawn or he'd like it to

18    persist.

19    Fair enough?

10:53:42    20    MR. GOLDENBERG:  Yes, Your Honor.

21    THE COURT:  All right.  One last note I'll share

22    with you, because I am eager to know if any of you are

23    opposed to this.

24    One intention I have, believing that there will be

10:53:57    25    a requirement for a consolidated class action complaint, is

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

80

1      to change its title from that of the otherwise first-named

2      case, Feezle, to In Re:  East Palestine.  Would anyone come

3      up with a better title or find that objectionable?

4              Mr. Goldenberg, can I call on you first since

5      you're still unmuted?

6              MR. GOLDENBERG:  Yes.  I think that's fine, Your

7      Honor, and appropriate.

8              THE COURT:  Okay.  Mr. Katz?

9              MR. KATZ:  Your Honor, we think that's actually

10     the best way to handle this.

11             THE COURT:  Right.  It would be most evident, as

12     Mr. Nils Johnson has indicated, one concern is what's

13     happening, are we being represented?  Yes.  In Re:  East

14     Palestine.

15             Mr. Clements, anything objectionable about that?

16             MR. CLEMENTS:  No, Your Honor.

17             THE COURT:  All right.  I think I've gotten to the

18     end of my to-do list.  You have been wonderful.  I've kept

19     you nearly two hours.  None of you have begged for a recess,

20     although you have deserved the right to do so.

21             I will docket minutes.  I will take some time to

22     further contemplate what you have shared.  Know I appreciate

23     it.  I know that you are all doing your best.  And unless

24     there is something more we should discuss, I will close the

25     record.

1          On behalf of leadership for Feezle, anything more

2     at this time?

3          MR. KATZ:  No, Your Honor.  Thank you for all the

4     consideration today.

10:55:23   5          THE COURT:  You deserve it, each of you and all

6     those you represent.

7          Anything more on behalf of Team Ohio or Fisher?

8          MR. BERMAN:  No, Your Honor.  Thank you for

9     listening to us.  Appreciate your time here.

10:55:34  10          THE COURT:  Mr. Berman, when you've been in the

11     seat as long as I have, it's always easy to listen to

12     well-prepared, well-counseled and reasonable attorneys.

13     Thank you all for being that.  Even when you disagree, you

14     do it agreeably, and I appreciate that.

10:55:50  15          Mr. Jones, anything more before I close the

16     record?

17          MR. JONES:  No, Your Honor.  Thank you so much for

18     your time and attention this morning.

19          THE COURT:  And thank you.  And thank you also for

10:56:01  20     your courageousness.  Not always easy to be a dissenting

21     voice, but you necessarily add to the record and I have

22     appreciated that.

23          Thank you all.

24          Defense counsel, let me just check with you to see

10:56:12  25     if there is anything more before I close today's record.

1              MR. CLEMENTS:  Yes, Your Honor.  Just very

2      briefly.  Mr. Katz alluded to this and Ms. Graham alluded to

3      it a little bit earlier.  But we wanted to just make Your

4      Honor aware that there is a case pending in the Western

10:56:31  5      District of Pennsylvania that was brought on behalf of

6      Blackhawk School District, which is a district that

7      encompasses parts of Beaver County and adjoining Lawrence

8      County, both of which are on the Ohio border.

9              That litigation is recently instituted, and it is

10:56:49  10      our intention to file a motion to transfer venue to the

11      Northern District of Ohio.

12              So we wanted to just mention that to you so you

13      were aware of it and you weren't caught off guard at some

14      later point.  So that's number one.

10:57:06  15              Secondly, there were a couple newly filed cases

16      recently.  One is the Loyd case, L-o-y-d, which is a class

17      action case which was filed at 23-, I think it's 634.  That

18      was a transfer to Your Honor.  And I assume that counsel in

19      that case is part of this proceeding.

10:57:26  20              There was a separate-filed case under the same

21      plaintiff name, Loyd, 23-626, which is a declaratory

22      judgment action for costs under CERCLA that I think is

23      before Judge Lioi, if I'm pronouncing her name correctly.

24              So I wanted to make Your Honor just aware of that.

10:57:50  25      And I don't know if the plan is to have that transferred to

1   you, but I wanted Your Honor to be aware that there were

2   companion cases in the Loyd matter, and that one has not

3   been transferred to you.

4          And then there was a case that was filed

10:58:01  5   yesterday, Mann, M-a-n-n, versus Norfolk Southern, 23-672,

6   that was assigned to Judge Adams.  That's an individually

7   filed case and not a putative class action.

8          THE COURT:  Thank you.  I appreciate being made

9   aware of the Blackhawk School District case and your plan to

10:58:24  10   ask the Western District of Pennsylvania judge to transfer

11   it to the Northern District of Ohio.  I am not aware of its

12   contents beyond what's been mentioned by you and earlier by

13   a colleague on the other side.  As you -- but I'll await

14   what you write.  And I will trust that my colleague in the

10:58:44  15   Western District of Pennsylvania will assess it under the

16   rules as it should be and decide whether or not to make that

17   transfer.

18          When a matter is transferred, and you likely know

19   some of this, it doesn't mean it will end up on my docket.

10:58:59  20   It will be transferred to the Northern District of Ohio.  It

21   will be drawn by the judge next up.  And, as you have

22   experienced most recently with Loyd, could be transferred if

23   related.

24          I am aware of both Loyd cases and do not believe

10:59:17  25   that seeking declaratory judgment is sufficiently related to

84

1     the other, at the time, 29 cases on my docket.

2              So, Mr. Clements, it still resides on Judge Lioi's

3     docket, not because it's been ignored, but because it's

4     different, sufficiently enough, from the others.  In fact,

10:59:39   5     there is another more similar to it based on my early

6     review, and that resides on Judge Adams' docket.  So if

7     there is a more appropriate place to transfer it, that might

8     be the place.  But again, you and the colleagues overseeing

9     those dockets are in the best place to make those decisions.

11:00:00   10             At this juncture, I don't see an intersection for

11    the declaratory judgment action filed by Plaintiff Loyd on

12    my docket.  That might not always be the case.

13             I am not aware of the most recently filed case,

14    the one that ends 672, Mr. Clements, that you've said is on

11:00:21   15    Judge Adams' docket, but I'll make inquiry and see.  Usually

16    my colleagues are pretty good about reviewing their own

17    dockets and making sure that I am aware, and I make an

18    assessment and happily will accept those that are related.

19    So thank you for making me aware of that one.

11:00:42   20             Anything more, Mr. Clements?

21             MR. CLEMENTS:  Yes.  Just one last comment, Your

22    Honor.  We removed five cases that were pending in -- or

23    originally filed in Columbiana County Court of Common Pleas,

24    we removed those to federal court.  There were five separate

11:01:02   25    actions.  They have all been assigned to Your Honor.

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1        I wanted to just draw this to your attention,

2   because, you know, with respect to the order that Your Honor

3   is going to enter with respect to consolidation and

4   whatnot -- and Ms. Rudzik, who is counsel for the plaintiffs

11:01:16   5   in those cases, may want to speak on behalf of her clients.

6   But the first response date in the cases before Your Honor

7   is with the Feezle matter based on the waivers that we

8   returned.  That date is April the 10th.

9        With respect to the Columbiana County cases that

11:01:35   10   were filed in state court and removed, the time period for

11   our response is a little bit more accelerated there, and the

12   due date for that is April the 6th.  So that's a little bit

13   earlier than the Feezle case on April the 10th.  So I wanted

14   Your Honor to be aware of that.

11:01:52   15        But I did speak to Ms. Rudzik about that, and she

16   can comment if she wishes, but she was agreeable to either

17   tracking along with whatever the court decided with respect

18   to the implementation of a scheduling order for responses by

19   the defense, and otherwise agreeable to a 60-day extension

11:02:16   20   for Norfolk Southern to respond.

21        But I just wanted Your Honor to be aware that

22   there was this earlier date technically for a due date for

23   Norfolk Southern's response.

24        THE COURT:  Thank you, Mr. Clements.

11:02:27   25        Thank you, Attorney Rudzik, for making yourself

86

1    visible to me.

2         If you have something to add.  What I hear is

3    slight concern that even earlier than the April 10 response

4    date in the Feezle matter is the response date for at least

11:02:44  5    one or maybe more of those removed from state court that

6    have been filed by you, and the prospect of an extension of

7    time, Mr. Clements has expressed at least 60 days.  I am

8    open to hearing from you.

9         I will share with you that if I haven't issued my

11:03:06  10   ruling that would stay the obligation to respond by the 6th,

11   something has gone wrong in my world.  But if something does

12   go wrong in my world, would you be opposed to giving the

13   defense a greater period of time so that no response would

14   be due before the 10th of April, to be sure, but maybe even

11:03:31  15   beyond that?

16         MS. RUDZIK:  We did speak, Your Honor, and we have

17   no problem with that.

18         THE COURT:  Thank you.  Appreciate your

19   cooperativeness.

11:03:40  20        Good points, Mr. Clements.  Did you reach the end

21   of your list or is there more?

22         MR. CLEMENTS:  That's it, Your Honor.  Thank you.

23         THE COURT:  All right.  Thank you all.  Again,

24   it's a pleasure.  I am sorry about the circumstances that

11:03:52  25   have brought us all together, but I think we have among us

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

1  what's necessary to do the work that is required.

2          And I just look now to see if anyone is unmuting

3  or raising a hand to indicate a need to speak.  I don't see

4  that.

11:04:14  5          Applaud yourselves a bit for what you've done this

6  morning.  You've given me much that I've needed to complete

7  my work.

8          Await minutes on the docket, but the order will

9  come, and the early part of next week is my goal.  Do take

11:04:27  10  care.  The hearing is adjourned.

11          ALL COUNSEL:  Thank you, Your Honor.

12      (Proceedings concluded at 11:04 a.m.)

13                      - - -

14

15              C E R T I F I C A T E

16

17

18      I certify that the foregoing is a correct transcript

19  from the record of proceedings in the above-entitled matter.

20

21          */s/ Mary L. Uphold*        April 6, 2023
            Mary L. Uphold, RDR, CRR    Date
22

23

24

25